This matter is before us on two consolidated appeals of appellant, Michael G. DiPietro, from two judgments of the Court of Common Pleas of Franklin County, Division of Domestic Relations, dismissing appellant's motions for relief from judgment and for a change in child support and alimony.
On April 30, 1980, appellant and appellee, Barbara K. DiPietro, executed a separation agreement in anticipation of the dissolution of their marriage. The separation agreement determined issues concerning the custody and support of the parties' two minor children, the division of their marital property and liabilities, and other matters. The agreement states, inter alia, that each party fully understands all of the terms of the agreement; that each has read the agreement and it is in accord with his and her understanding; that appellant is aware that neither of two named attorneys represents his interest; and that he has had a full opportunity to evaluate his need for representation and to obtain counsel.
Judgment was entered on June 3, 1980, after an oral hearing at which the parties each indicated they voluntarily agreed to and executed the separation agreement that became a part of the judgment entry.
Over a year later, on July 29, 1981, appellant filed a four-branch motion requesting the trial court to: (1) vacate the order incorporating the separation agreement into the decree of dissolution or strike the provisions of the separation *Page 45 
agreement providing for alimony, medical expenses and life insurance and the provision disposing of appellant's pension rights and modify the child support provisions and strike or modify such other terms as justice requires, all on the basis that the appellant was not mentally competent when the decree was entered, was not represented by counsel and because the provisions of the separation agreement are unconscionable and oppressive; (2) grant appellant relief from judgment pursuant to Civ. R. 60(B), particularly relating to the alimony provision and the other provisions referred to in the first branch; (3) reduce the amount of child support and set specific times for visitation with the minor children; and (4) eliminate or reduce appellant's alimony obligation.
Appellant attached an affidavit to his motion in which he claimed that, at the time he signed the separation agreement or "when the case was signed with court," he was under the care of numerous physicians, had experienced psychological problems, and had no knowledge or experience regarding his legal rights in domestic relations matters; that he now realizes he was unable to evaluate or understand the consequences of the agreement he signed; that appellee is working and can support herself without alimony; and that the agreement is therefore unfair.
Following the filing of a memorandum contra by appellee and prior to the continued date of the hearing on his original motion, appellant filed another motion stating additional reasons the court should vacate or modify the decree of dissolution. The reasons generally are that appellant was not represented by counsel, that the provisions of the separation agreement are onerous, unconscionable and unfair, and that appellant relied upon the attorney who was representing appellee when he signed the agreement.
The trial court referred to a referee the branches of the motion seeking a reduction in child support and a reduction in alimony, and the other issues were tried to the court.
Appellant asserts the following four assignments of error in support of his appeals:
"I. The Court erred in limiting the scope of the hearing to the incompetency of Appellant at the time of the execution of the Separation Agreement and in further limiting the time period for which evidence could be produced relating to Appellant's competency in January, 1980 to June, 1980, and further in refusing to hear evidence regarding Appellant's competency from the time of the granting of the dissolution to the filing of the post-decree motions.
"II. The Court erred in failing to grant relief from judgment to vacate, or reform the terms of the `separation agreement' and decree since Appellant was mentally impaired at the time of the execution of the dissolution documents and/or at the time of the Entry of the Decree and in sustaining the motion to dismiss.
"III. The Court erred in sustaining Appellee's motion to dismiss and erred in failing to grant relief from Judgment since the terms of the `separation agreement' as incorporated in the Court's decree are unconscionable, onerous, oppressive, unfair, inequitable, and contrary to Public Policy, and otherwise based upon Civil Rule 60(B) and based upon the Court's inherent power to vacate or modify such judgments.
"IV. The Court erred in failing to reduce the amount of child support to be paid by Appellant and in granting a money judgment against Appellant, further erred in failing to reduce or eliminate the alimony to be paid by Appellant, and further erred in granting a money judgment against Appellant for alimony arrearage."
At the beginning of the hearing, the trial court informed the parties that it considered Civ. R. 60(B)(5) to be the only *Page 46 
ground under Civ. R. 60(B) upon which the dissolution decree and separation agreement could be vacated or modified. The purported "other reason justifying relief from the judgment" urged by appellant was that he was not competent to understand what he was doing when he signed the separation agreement. The trial court limited testimony on that question to the period of time beginning January 1, 1980 and apparently ending June 30, 1980.
In support of his first assignment of error, appellant argues that he should have been permitted to offer evidence of his mental and physical condition for some unspecified period prior to January 1, 1980, and for "a considerable period subsequent to June 1, 1980." Appellant also argues that he should have been permitted to offer evidence of his competency from the time the dissolution was granted to the time he filed his post-decree motions, apparently so that he could take advantage of the other reasons in Civ. R. 60(B) for vacating a judgment.
The trial court has broad discretion in the admission and exclusion of evidence and an appellate court will not reverse the judgment of the trial court for failure to admit or exclude evidence unless the trial court has clearly abused its discretion and the party complaining has been materially prejudiced thereby.State v. Withers (1975), 44 Ohio St.2d 53 [73 O.O.2d 280].
Although the general rule is that it takes more capacity to enter into a contract such as a separation agreement than to make a will, since there are two parties to a contract and their interests are antagonistic (Kime v. Addlesperger [1903], 2 Ohio C.C. [N.S.] 270, 275), the courts have also recognized that:
"* * * A person's memory may be impaired, his body weak and feeble; he may not be able to labor, or do business as when young, he may ask foolish questions, repeat questions and conversations, and, in the language of some of the books, he may not be always able to recognize his neighbors and friends; yet that does not determine whether he has capacity to transact ordinary business * * *." (Id. at 275.)
In order to prove that he was incompetent to contract at the time he entered into the separation agreement, appellant was required to prove, by clear and convincing evidence (Willis v.Baker [1906], 75 Ohio St. 291, paragraph one of the syllabus), that the separation agreement was executed while appellant was mentally incompetent or under the influence of fraud, undue influence or duress.
The elements of fraud are well-established and are generally stated to be an actual or implied misrepresentation of material fact made with knowledge that the representation is false or with utter disregard for its truth or falsity and with the intention of misleading the other party into relying upon it, and reliance by the other party upon the misstated fact with resulting injury as a consequence of such reliance. Block v. Block (1956),165 Ohio St. 365 [60 O.O. 1], paragraph two of the syllabus. To set aside a separation agreement on the ground that one of the parties was induced to sign the agreement as a result of the fraudulent acts of the other party, the essential elements of fraud must be established. Miller v. Knight (1961), 115 Ohio App. 485
[21 O.O.2d 133]. The elements of undue influence are: (1) a susceptible party, (2) another's opportunity to influence the susceptible party, (3) the actual or attempted imposition of improper influence, and (4) a result showing the effect of the improper influence. West v. Henry (1962), 173 Ohio St. 498, 501
[20 O.O.2d 119].
The courts have recognized that evidence regarding fraud or undue influence in the execution of a legal document must be confined to a reasonable time both before and after the execution of the document. See Kennedy v. Walcutt (1928), 118 Ohio St. 442. The trial judge determines what constitutes a reasonable *Page 47 
time (Oehlke v. Marks [1964], 2 Ohio App.2d 264 [31 O.O.2d 381]) and, in the absence of an abuse of discretion, we will not reverse the trial court's determination.
Appellant attempted to show from the testimony of eight witnesses, including his own testimony, that he was not competent to execute the separation agreement. Appellant also argues that, if he had been permitted to produce more witnesses, he could have shown that he was in a weakened mental condition, and that apparently his wife exercised fraud, undue influence and "knowledge" to his detriment.
The trial court in this case permitted appellant to offer the testimony of a psychiatrist, Dr. Resor, who saw appellant between March and April 22, 1980, and a psychologist, Dale Wenke, who saw appellant in early 1980 and then not again until October 1981. Appellant was also permitted to present the testimony of his battalion chief, two co-workers, and his wife, as well as his own testimony regarding his change of disposition from January 1980 until June 1980. It is clear that appellant became introverted, had temporary loss of memory, and was unable to perform some of his functions as a firefighter.
Appellee testified that she did not understand what had gone wrong with appellant, that he had always been a family man and that at one time she was afraid he might take his life.
Appellant has not persuaded us that the testimony of other persons regarding his conduct, prior to January 1980 or after June 1980, would constitute anything more than cumulative evidence. The important day in determining whether appellant was competent to execute a separation agreement was April 30, 1980. The trial court did not abuse its discretion by designating January 1980 through June 1980 as the period that was important in determining whether appellant's signing of the separation agreement was a product of fraud or undue influence. The first assignment of error is, therefore, overruled.
While a separation agreement executed by a husband and wife pursuant to R.C. 3103.05 is generally required to be fair and equitable to the wife (who was once deemed to be the party in need of protection, see Brewer v. Brewer [1948], 84 Ohio App. 35
[39 O.O. 89], paragraph five of the syllabus; cf. In re Kesler
[1978], 59 Ohio Misc. 33, 41 [13 O.O.3d 105]), where the parties have dealt at arms length with each other rather than in a confidential relationship, the test is whether the agreement is the product of fraud, duress or undue influence upon the party in the weaker bargaining position. The fact that a separation agreement does not equally divide the property of the parties does not require a finding that the agreement is unenforceable. There is no presumption that marital property should be divided equally upon divorce. Cherry v. Cherry (1981), 66 Ohio St.2d 348
[20 O.O.3d 318].
While the separation agreement executed by appellee and appellant appears to be generous to appellee, the record does not support by clear and convincing evidence appellant's contention that he signed the agreement due to undue influence, duress or fraud. While appellant makes a reference to mental incompetence and insanity in his brief, the record is totally devoid of any evidence supporting such a proposition. The more serious contention by appellant seems to be that he executed the separation agreement in a weakened mental and/or physical state and that his wife and her lawyer took advantage of him in causing him to sign an agreement that was not fair to him. It was appellant's burden to show that he signed an agreement he would not have signed had he not been mentally incompetent, unduly influenced or fraudulently induced to do so.
As we observed in our disposition of the first assignment of error, there was *Page 48 
testimony that the appellant had undergone a change in his ability to communicate with other people and to perform his work. It should be further observed that he admitted to having a sexual relationship as early as six months before the termination of his marriage with the woman whom he married several months after his divorce. The trial court would not have abused its discretion if it had considered that to be one of the factors affecting appellant's change in mood during the period in question. Nor would the trial court have erred by inferring that one reason appellant signed the separation agreement that was generous to his wife was that he was anxious to end his marriage in order to begin a new marriage.
Appellant had been admitted to the hospital on February 29 or March 1, 1980. Dr. Resor testified that, when he saw appellant in the hospital, appellant was in a very depressed condition and that he prescribed antidepressant drugs and psychotherapy treatment. He further testified that he recommended appellant be released from the hospital in March 1980; that appellant was released; that, when he saw appellant again on March 28, 1980, appellant was less depressed; that he saw appellant again on April 22, 1980, which was eight days prior to the date the separation agreement was executed, and that his notes from that visit indicate that appellant was living with his girlfriend, was very happy, had stopped his medication which he did not seem to need any more; and that he wrote a letter for appellant indicating he could return to work.
The doctor further testified that, on April 22, 1980, appellant did not appear to be incompetent in any way to handle his duties at work. The doctor also testified from notes he made on July 6, 1981 regarding a phone call from appellee's attorney in which he advised the attorney that he was unable to say that there was at any time any mental impairment and that, particularly on April 22, appellant was quite happy and living with his girlfriend and seemed relieved to get out of the marriage. The doctor restated that he did not believe appellant had any mental impairment on April 22, 1980. Finally, Dr. Resor testified that, if he had known appellant had had difficulty functioning when he returned to work following his hospitalization, his opinion might have been different and that appellant may have been intentionally minimizing or distorting his depressive symptoms in order to cause him to permit him to return to work.
The court investigator testified that she interviewed appellant on May 14, 1980; that her notes on the interview indicate that appellant was satisfied with the separation agreement; that he was "very competent"; that he appeared to comprehend what she was saying; and that he joined in the conversation.
Dale Wenke, a clinical psychologist, testified that he first saw appellee and appellant in February 1980 for marriage counseling; that he last saw appellant on February 26; and that, on the basis of his interviews and no psychological testing, he diagnosed appellant as being severely depressed. In response to a hypothetical question which assumed that appellant's condition and the factors causing the condition were the same at the end of April as they were at the end of February, Wenke testified that appellant would probably still have been severely depressed in April. However, there was evidence indicating that, following appellant's release from the hospital, his condition had improved substantially and that one of the factors causing his depression, living with his wife, had changed because he was then living with the woman he married following his divorce.
Wenke was not asked and did not testify regarding appellant's ability to understand the separation agreement he signed on April 30, 1980. The references in appellant's brief to Wenke's testimony regarding appellant's difficulty in making *Page 49 
decisions are references to Wenke's observations of appellant before he was hospitalized for his depression. The trial court could therefore have properly determined to give these observations little weight in determining whether appellant was fraudulently or unduly influenced when he signed the separation agreement following his release from the hospital.
Our review of the record in this case causes us to conclude that appellant has fallen far short of proving that he was unduly influenced or fraudulently induced to sign the separation agreement. A state of depression is not equivalent to mental incompetency. If agreements between husbands and wives could be set aside on the ground that one of the parties was severely depressed when he or she signed the agreement, separation agreements and other agreements executed by persons involved in dissolution or divorce proceedings would tumble like pins on a bowling alley.
The record in this case argues more strongly for a conclusion that appellant signed the separation agreement to relieve himself of the stress caused by his extramarital relationship and to fulfill his desire to be removed from an unhappy marriage and his apparent desire to live with and become married to another woman. It can be concluded from this record that appellant signed the separation agreement with an abundance of haste rather than a lack of mental competence. Cf. Young v. Young (1982), 8 Ohio App.3d 52, a case in which we affirmed a decision of the trial court finding the separation agreement to be unenforceable because it was executed by the wife under duress and undue influence. InYoung, the wife testified she did not follow the advice of her attorney because of her fears caused by her husband's threats to kill her and to humiliate her and her employer by false testimony. Appellant did not meet his burden of establishing undue influence or fraud, and the second assignment of error is overruled.
Appellant argues in support of his third assignment of error that he agreed to a separation agreement that is so unfair to him that it is onerous, unconscionable and against public policy. He cites no case that supports such a holding in this case. While the separation agreement did give appellee two parcels of real estate, a generous award for support and alimony, two automobiles, the parties' mutual fund and a $6,000 interest in appellant's retirement fund if he died or withdrew from the fund, appellee had three daughters to support, had only a part-time job in April 1980 grossing $170 per week and a mortgage on the residence with accelerating mortgage payments and no retirement plan.
Appellant was earning $1,400 per month net and an "earned time" supplement, had a clothing allowance and was receiving rental income from the real estate awarded to him. He had also worked at other jobs when he was not on duty as a firefighter. He made all the payments for a year after the dissolution before falling into arrears. To be sure, appellant perhaps could have negotiated a better separation agreement. But to hold that this separation agreement is unconscionable and against public policy would be to close our eyes to the facts of this case and the law. The third assignment of error is not well-taken and is overruled.
With respect to the motion to modify child support, the test is whether there has been a change in circumstances since the order of dissolution was entered. R.C. 3105.65(B); Peters v. Peters
(1968), 14 Ohio St.2d 268 [43 O.O.2d 441], syllabus; Fouche v.Fouche (June 29, 1982), Franklin App. No. 82AP-30, unreported. Appellant's argument regarding changed circumstances is, in effect, an alternative argument to that raised in the first three assignments of error.
The referee found that appellee was earning $170 per week in April 1980 and *Page 50 
$206 at the time of the hearing on the motion. She had received an increase in rental income of $15 per unit from her two-family investment property. She also had borrowed money and the mortgage payment on her residence had increased pursuant to a schedule which was known to the parties when the separation agreement was filed.
Appellant testified that he had had two pay raises since the dissolution; there was no change in the property he owned; his earned time additional compensation and clothing allowance had increased since the dissolution; and he was paying less for housing than the $100 per month rent he was paying his girlfriend at the time of the dissolution since he had moved into a residence he and his mother owned. He testified that the reason he stopped making alimony and support payments was because his present wife had lost her job. However, at the time of the dissolution, he was not relying upon his new wife's income and therefore her loss of a job does not represent a change in circumstances. The trial court did not abuse its discretion in ordering a judgment for the stipulated amount of arrearage of $4,488.18 or in overruling the motion for a modification of support.
With respect to the motion to modify alimony, the trial court had no jurisdiction to make a modification in alimony because the separation agreement incorporated into the dissolution decree did not include a provision permitting the court to modify alimony.Alban v. Alban (1981), 1 Ohio App.3d 146. The fourth assignment of error is not well-taken and is overruled.
For the foregoing reasons, the judgments of the trial court are affirmed.
Judgments affirmed.
REILLY and COOK, JJ., concur.
COOK, J., of the Eleventh Appellate District, sitting by assignment in the Tenth Appellate District.