OPINION
Appellant, Richard J. Weber, and appellee, Cynthia K. Oler (fka Weber), had their marriage dissolved in the Geauga County Court of Common Pleas on February 18, 1993. They had one child as issue of the marriage, Richard J. Weber, Jr., born on March 23, 1989. Pursuant to the separation agreement entered into by the parties, appellant was to pay monthly child support of $1,389.83 and uninsured medical expenses in accordance with his pro rata share of their combined total income.
On May 27, 1993, appellant filed his first motion to reduce his child support obligation based on a change in circumstances. On June 10, 1993, appellee filed a motion to show cause and for attorney's fees for failure to pay child support. These actions were dismissed by agreement of the parties on September 23, 1993.
On December 12, 1997, appellant again filed a motion to reduce his child support obligation. On January 15, 1998, appellee filed a motion to show cause and for attorney's fees to pay for child support arrearages, unpaid medical expenses, unpaid life insurance premiums, and the court costs to prosecute her motion and defend his motion. These issues came on for a hearing before a magistrate, on October 30, 1998.
At the hearing, appellee testified that, in 1993, she started sending Richard Jr.'s unpaid medical bills to appellant, but he did not pay. She eventually stopped sending the bills because he would not pay them. Sandy Tylicki, who lived with appellant for about six months during 1994, testified that she observed appellant receive medical bills from appellee and throw the bills away. Appellant testified that he never received any medical bills. Appellee further testified that appellant had not paid life insurance premiums as required by the separation agreement. He testified he did not pay because he was "was very upset and pissed off."
With regard to his motion to reduce child support, appellant testified that his income was much lower than when the separation agreement was executed. In 1977, he and John Herkes started a business called Laser Automation, Incorporated, which used lasers to cut sheet metal for fabrication shops and sheet metal shops. Until 1992, appellant was earning a salary of about $90,000 from Laser Automation. He also earned income from renting out condominiums he owned and by buying old lasers at a discounted price, fixing them, and selling them for a profit. In November 1992, three months before signing the separation agreement, appellant sold his shares in Laser Automation and executed a buyout agreement with Mr. Herkes. As a result of that agreement, appellant received a total of $525,000, $380,000 of which was paid in cash with the rest being paid out annually. Taxes and attorney's fees reduced the amount of the buyout. Appellant did not get another job, but supported himself with proceeds of the buyout for a few years.
In August 1994, according to appellant's testimony, he decided to revise his will. While doing this, he approached his nephew, Daniel Piscura, Jr., and asked him if he would like to receive his inheritance at that time as a gift or later, after appellant's death. Mr. Piscura chose to take the money, $150,000, at that time. Mr. Piscura had, in 1992, started a business called Creative Processing, Incorporated, which used lasers to cut sheet metal for machine shops. Appellant testified that, although he had no ownership interest in the corporation, he did some consulting for Creative Processing in 1995 and started working there full-time, for $350 per week, at the end of 1996. Sandy Tylicki testified that, in 1994, appellant told her that he owned Creative Processing and that he would use her car to go to work there so that nobody would know that he owned the business. In 1996, appellant bought a laser for $75,000 that he repaired and leased to Creative Processing for $1300 per month. He stopped receiving lease payments for the laser in March of 1998 because it was broken and would cost $8,000 to fix. He estimated the laser's value at $225,000 at that time.
On November 3, 1998, the magistrate issued his decision wherein he recommended that: appellant be held in contempt for failing to pay life insurance premiums and medical bills; judgment be entered against appellant for these unpaid bills and for unpaid child support; and, appellant's motion to reduce his child support obligation be overruled. Appellant filed timely objections to the magistrate's decision and attached transcripts of the hearing. On February 12, 1999, the trial court approved, but did not adopt, the magistrate's decision. It held appellant in contempt, but gave him an opportunity to purge if he paid the life insurance premiums. Appellant filed a notice of appeal from that order to this court, which we dismissed for lack of a final appealable order on September 20, 1999. See In the Matter of the Dissolution of theMarriage of: Weber (Sept. 20, 1999), Geauga App. No. 99-G-2217, unreported. On January 7, 2000, the trial court issued a nunc pro tunc
judgment entry adopting the magistrate's decision. Appellant assigns the following errors:
 "[1.] The trial court and magistrate erred to the prejudice of the appellant by failing to grant the appellant's motion to reduce his child support obligation according to the competent, credible evidence presented thereby.
 "[2.] The trial court and magistrate erred to the prejudice of the appellant by finding the appellant in contempt of court for failing to pay medical expenses of the minor child.
 "[3.] The trial court and magistrate erred to the prejudice of the appellant by awarding the appellee attorney's fees and expenses both for defending the appellant's motion and for prosecuting her motions.
 "[4.] The trial court and magistrate erred to the prejudice of the appellant by admitting and relying upon the testimony of Sandy Tylicki."
Appellant's second assignment of error is moot because he has purged the finding of contempt against him.
In his first assignment of error, appellant asserts that the trial court erred by not sustaining his motion to reduce his child support obligation. He asserts that there was insufficient evidence presented to show that he was voluntarily underemployed and the trial court improperly imputed his income at $91,000, not $19,500 as the evidence he presented indicated. In his brief, appellant argues at length that: he is not an owner of Creative Processing; he does not receive any unreported income from Creative Processing; he is fifty-five years old and in poor health; and, there was not sufficient evidence presented to show that he could obtain employment in the laser automation industry that would pay him more than he currently receives. Appellant misconstrues the proper burden of proof required to support a motion for the reduction of child support ordered pursuant to a separation agreement.
R.C. 3113.215(B)(4) requires a movant to demonstrate a substantial change of circumstances before the trial court can modify child support.Loving v. Balasz (Nov. 18, 1994), Lake App. No. 94-L-021, unreported. Absent a separation agreement, a substantial change in circumstances is shown when a ten percent deviation in the support figure from the existing order results when recalculating under the guidelines. When a trial court reviews a separation agreement, under R.C. 3113.215, pursuant to a showing of change of circumstances, the court must review the agreement to see whether the change of circumstances was one not contemplated at the time of the original order. Slotta v. Slotta (July 28, 1989), Lake App. No. 13-081, unreported; DiPietro v. DiPietro
(1983), 10 Ohio App.3d 44, 49, 460 N.E.2d 657, 665.
In his motion to reduce child support, filed on December 12, 1997, appellant cited as his changed circumstances that he was now earning less income than when child support was originally ordered and the variance was greater than ten percent when calculated under Ohio's child support guidelines. However, the child support guidelines alone are not controlling when determining modification of a support order made pursuant to a separation agreement. Also relevant are the circumstances in contemplation at the time of the original order. Sutherell v.Sutherell (June 11, 1999), Lake App. No. 97-L-296, unreported.
The current situation is exactly what we envisioned in Sutherell, where a party could agree to a high support figure to avoid a protracted divorce, then return a short time later demanding that his support be lowered. Appellant signed the separation agreement with complete knowledge that he had just sold his ownership interest in Laser and would not be receiving the same annual salary in the future. Furthermore, he received $525,000 from the sale of his ownership, which was also in his contemplation at the time of the separation agreement. While appellant attested in the affidavit attached to his motion to reduce child support that he was earning less income due "to no fault of his own," he was under no obligation to make a gift of $150,000 to his nephew that was used in a business remarkably similar to the one in which appellant had just sold an interest. We cannot hold that appellant's decision to make this "gift," in lieu of using it to meet his child support obligation, constituted an involuntary change in circumstances. Appellant failed to meet his burden to show a change in circumstances. His first assignment of error is without merit.
In his third assignment of error, appellant asserts that the trial court erred by awarding attorney fees and expenses because there was no showing that they were necessary to protect appellee's interests and no evidence was presented regarding appellee's ability to pay.
A showing of necessity is not a prerequisite to an award of attorney's fees. Rand v. Rand (1985), 18 Ohio St.3d 356, 481 N.E.2d 609. A court's decision on a request for attorney fees will not be overruled absent an attitude that is unreasonable, arbitrary or unconscionable. Dunbar v.Dunbar (1994), 68 Ohio St.3d 369, 627 N.E.2d 532. In the current case, the trial court awarded fees incurred by appellee in attempting to collect an arrearage that appellant owed. This is within the trial court's discretion. From its entries, it is obvious that the trial court believed that appellant was trying to delay the proceedings and that his motion to reduce support was not supported by law. We do not believe that the court abused its discretion. Appellant's third assignment of error is without merit.
In his fourth assignment of error, appellant asserts that the trial court erred by admitting the testimony of Sandy Tylicki. Because the contempt matter is not before this court, Ms. Tylicki's testimony, with regard to the contempt matter, is irrelevant. Furthermore, any error in allowing her testimony about appellant's possible ownership interest in Creative Processing would be harmless. Because of our disposition of appellant's first assignment of error, whether or not appellant had an ownership interest in Creative Processing had no bearing on whether a change in circumstances, not in the contemplation of the parties at the time they executed the separation agreement, had occurred. Appellant's fourth assignment of error is without merit.
For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed.
 _________________________ ROBERT A. NADER, JUDGE
CHRISTLEY, P.J., O'NEILL, J., concur.