[Cite as *Hill v. Hill*, 2017-Ohio-2625.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Nicole B. Hill, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-891 |
| v. | : | (C.P.C. No. 09DR-1492) |
| Travis D. Hill, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 2, 2017

**On brief:** *Bergman & Yiangou,* and *Andrew J. Niese,* for appellee.

**On brief:** *Travis B. Hill,* pro se.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

BRUNNER, J.

{¶ 1} Appellant, Travis D. Hill, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, finding him in contempt. For the following reasons, we affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Travis and appellee, Nicole B. Hill, were married on December 28, 1985. They terminated their marriage on June 15, 2009 by a judgment entry decreeing it dissolved. The judgment entry incorporated a separation agreement.

{¶ 3} On October 27, 2010, Travis filed a motion for contempt to enforce the decree with regard to Item IV of the separation agreement, requiring Nicole to make a one-time withdrawal from her Ohio Public Employees Retirement Plan ("OPERS") and pay Travis $75,000.

No. 15AP-891

{¶ 4}   Upon Nicole's bankruptcy counsel filing a notice of suggestion of stay, the common pleas court stayed the domestic case.  On May 7, 2012, an agreed order for conditional relief was filed in the United States Bankruptcy Court for the Southern District of Ohio to allow the parties to obtain from the Domestic Relations Division of the Franklin County Common Pleas Court a determination of the disposition of property and disputed domestic relations issues.

{¶ 5}   On June 7, 2012, Nicole filed in the Domestic Relations court a motion for contempt against Travis alleging he violated the trial court's order in several ways.  The trial court referred the motion to a magistrate.  On July 15, 2013, Travis filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code.  The United States Bankruptcy Court for the Southern District of Ohio determined that Travis's interest in Nicole's OPERS account was not a part of his bankruptcy estate and granted conditional relief from stay for the parties to proceed in the Domestic Relations Division of the Franklin County Common Pleas Court to receive a determination of the appropriate distribution of property.

{¶ 6}   The magistrate held a hearing on the parties' cross-motions for contempt.  At the hearing, both Travis and Nicole testified.  The separation agreement provided that Travis would transfer all interest in the marital residence property by quitclaim deed at the time of the execution of the separation agreement (April 15, 2009).  In exchange, Nicole was required to pay Travis a one-time $75,000 award as his share of her OPERS pension within 30 days of the execution of the separation agreement.  Nicole was awarded all household goods and furnishings located in the marital residence, with a stipulated value of $15,000, and the 2000 Chevrolet Malibu.  Travis was to sell 2 tow trucks and a concession truck within 90 days of the agreement or pay Nicole $4,500 within 180 days.  Travis was required to pay Nicole 50 percent of the proceeds from 2 separate personal injury claims.  Finally, Nicole was ordered to pay the Buckeye Finance debt ($1,400).

{¶ 7}   Nicole testified she has been employed as a COTA bus driver for 15 years.  She admitted she had not complied with the order to pay Travis the $75,000, but the separation agreement did not reference the creation of a division of property order.  Travis admitted he owed Nicole for the trucks and the personal injury claims.  Travis did not provide a quitclaim deed at the time of execution of the separation agreement and

continued to remain in the house with the furnishings until it was sold in a foreclosure action.

{¶ 8} The magistrate denied Travis's motion for contempt, finding impossibility prevented Nicole from paying since the separation agreement did not reference the creation of a division of property order. The magistrate granted Nicole's motion for contempt. The magistrate deducted the amount Travis owed Nicole from the $75,000 from Nicole's OPERS account. After the offset, Travis still owed Nicole $638.86. The magistrate ordered Travis to serve 5 days in the Franklin County Corrections Facility on the contempt charges, but the magistrate suspended the sentence pending his compliance with the following purge order: paying Nicole the remaining $638.86 within 30 days and paying $5,000 in attorney fees in monthly installments.

{¶ 9} Travis filed a motion of appeal statement of the facts, which the trial court construed as objections to the magistrate's decision. The trial court found no error in the magistrate's decision, denied Travis's motion of appeal statement of the facts, and adopted the magistrate's orders. Travis filed a notice of appeal. While Travis timely filed his notice of appeal from the trial court's decision and entry, he stated that he was appealing from the magistrate's decision. However, in the interest of resolving with finality the issues raised on appeal, we construe Travis's appeal from the final, appealable trial court decision and entry.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Travis has set forth the following assignments of error for our review:

> I. In re Murphy, Court of Appeals of Ohio, First District Hamilton County-1983-10 Ohio App.3d 134, 461 N.E.2d 910 C-820722. A court cannot modify terms of a dissolution agreement and if the parties have not agreed the court does not have power to dissolve the marriage. R.C. §§ 3105.61 et seq., 3105.63. R.C. 3105.63 (separation agreement provisions "other than one permitted by the R.C., would be inequitable because it would require the court to set aside the dissolution and restore the marriage, a modification of a separation agreement in a dissolution proceeding, because there was no legal provision for the court to do so in the dissolution agreement:
>
> "A petition for dissolution of marriage shall be signed by both spouses, and shall have attached and incorporated a

separation agreement agreed to by both spouses" O.R.C. 3105.63 Separation agreement provisions (A)(1)."

II. Under the O.R.C. 3105.171(I) states: A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses.

III. The fact of this case is whether the appellee can surrender the 1791 Shady Lane Road property in a voluntarily bankruptcy (13 Schedule B Personal Property where the property is listed as $37,500.00), (schedule D, Listed as a deficit of $23,000.00) because of the housing market crash of 2009 in a Chapter 13 bankruptcy and still maintain the rights and privileges as an owner of said property and be compensated approximately $50,000.00 in an purge order against the appellant court ordered distributive award. This can only be able be modified by the court if there is a clause in the dissolution agreement (see Wright v. Wright-Court of Appeals of Ohio, Tenth District, Franklin County-2008-Not Reported in N.E.2d 2008 WL 4885677 08AP-353) (Cherry v. Figart Court of Appeals of Ohio, 12thd, Clermont County. (1993) 86 Ohio App.3d 123 620 N.E2d 174 2251, CA92-08-083).

Also, can the appellee sign over the title to the 2000 Chevrolet Malibu in lieu of paying a $75.00 towing bill and recovery $3200.00 in a purge order as well?

IV. Once the appellee surrendered the said property the requirement of the appellant producing a Quit Claim Deed for the 1791 Shady Lane Road property (See exhibit 11 appraisal, 12 Schedule I current income ($69,288.00 x 7 years $485,016.00 total income since dissolution), (13 Schedule B Personal Property where the property is listed as a $37,500.00), (schedule D, Listed as a deficit of $23,000.00 (Exhibit 15 Trustee final report showing that appellee paid $39,386.34 minus the refund of $10,184.34) and signing the title to the 2000 Chevrolet Malibu became moot. Also see (exhibit 6, email from county agent stating that the Quit Claim Deed dated 2012 was sufficient to remove the appellant name from the count record).

V. Another issues, can the lower court ignore the appellant testimony concerning the payments made for the favor of the appellee and ignore payments made to the appellee in the amounts of $1443.00 payment on the appellee Buckeye Loan

and $2900.00 in direct deposit payments as agreed in the dissolution agreement.

VI. In addition, the lower court is ignoring and restating the testimony in the court decision of the appellee witness Mr. Rettke the Franklin County Agent on page (See Hearing Transcript exhibit 6, testimony page 126, line 2-8) where a quit claim deed was delivered to the appellee that was sufficient to remove the appellant name from the property in question dated 08/28/2012.

VII. The court has modified the dissolution agreement in the form of Mortgage payments ($22,400.00, Home Equity $27,000.00) (see Magistrate Decision page 17, paragraph 3) (Edwards v. Edwards, Court of Appeals of Ohio, 2d,-1994-Not Reported in N.E.2d-WL, 95253 C.A.-14022) (Vetter v. Vetter, Court of Appeals of Ohio, 4d, Scioto County (1994) Not Reported in N.E.2d 1994 WL 483501 94CA2209) (DiPietro v. DiPietro, Court of Appeals of Ohio, 10d, Franklin County. (1983) 10 Ohio App.3d 44 460 N.E.2d 657 82 AP-281, 82AP-477.

(Sic passim.)

## III. DISCUSSION

{¶ 11} Initially, we note that Travis's arguments concerning his assignments of error are difficult to discern. Further, Travis includes additional arguments in the argument section of his brief that do not specifically correspond to the errors alleged in any of the listed assignments of error. Pursuant to App.R. 12(A)(1)(b), this Court is required to determine the appeal based on the assignments of error set forth in the briefs under App.R. 16. This is procedurally necessary, as we are permitted to sustain or overrule only assignments of error and not mere arguments.

{¶ 12} Nevertheless, despite these briefing problems, this Court will attempt to address the merits of Travis's arguments. But we shall do so according to App.R. 12(A)(1)(b), which requires that we determine the merits of Travis's appeal based on the assignments of error as listed, attempting to match arguments contained in the argument section of the brief with the listed assignments of error.

{¶ 13} Underlying many of his assignments of error is Travis's argument that the trial court abused its discretion by modifying the separation agreement. Travis cites *In re*

No. 15AP-891

*Murphy*, 10 Ohio App.3d 134 (1st.Dist.1983) and R.C. 3105.171(I) as authority that the trial court cannot modify the parties' separation agreement.[1]

{¶ 14} These authorities are not controlling under these facts because the trial court did not modify the parties' separation agreement. This case involves post-decree cross-contempt motions, not a distributive award or a modification of the separation agreement. A trial court has jurisdiction to find a party in contempt, even at the post-decree stage. In this case, the trial court did not modify the separation agreement but enforced the division of property provisions through the contempt finding. Although the issues Travis raises in his assignments of error are less than clear, it appears he is arguing that the trial court abused its discretion by setting off the financial obligations of the parties.

{¶ 15} The trial court found Travis in contempt of the dissolution decree that incorporated the parties' separation agreement and set forth several obligations of Travis. The trial court found Travis in contempt for failing to transfer all right, title, and interest in the real estate by quitclaim deed at the same time as the execution of the separation agreement. Further, the trial court found Travis in contempt for refusing to vacate the marital residence and refusing to relinquish the majority of the household furnishings that were awarded to Nicole. Travis continued to drive the 2000 Chevrolet Malibu without Nicole's consent until he received traffic tickets and the car was impounded. Travis admitted he did not pay the required amount to Nicole for the sale of the tow trucks and concession truck and he admitted he still owed her $3,700 for her portion of the personal injury claim proceeds. Finally, Travis fraudulently filed taxes in 2009 and 2010, leaving Nicole to report the entire debt to the IRS.

{¶ 16} Finding Travis in contempt, the trial court determined the amount Travis owed Nicole as a result of the contempt and set off that amount from the $75,000 Nicole owed Travis from her OPERS pension. As a result, the trial court found Travis owed the following:

| | |
|---|---|
| Mortgage payments | 22,400.00 |
| Home equity | 27,000.00 |
| Malibu | 3,200.00 |

---

[1] R.C. 3105.171(I) provides, as follows: "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses."

No. 15AP-891

| | |
|---|---|
| Truck sale proceeds | 4,300.00 |
| Personal injury | 3,700.00 |
| Tax Debt proceeds | 15,038.86 |
| Total | $75,638.86 |

(Mar. 11, 2015 Mag.'s Decision at 17.)

{¶ 17} Offsetting what Nicole owed Travis from this sum, the trial court determined that Travis owed Nicole $638.86. This offset appears to be what Travis is claiming is a modification to the separation agreement. The trial court's action to offset the parties' mutual obligations to one another was simply an enforcement of the division of property and property settlement provisions of the separation agreement, not a modification of it.

{¶ 18} The Supreme Court of Ohio defined the right of setoff as "that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction." *Witham v. South Side Bldg. & Loan Assn.*, 133 Ohio St. 560, 562 (1938). " 'The practice of setting off one judgment against another, between the same parties, and due, in the same rights, is ancient and well established.' " *Barbour v. Bank*, 50 Ohio St. 90, 98 (1893), quoting *Holmes v. Robinson*, 4 Ohio 90, 91 (1829). " 'A set-off, whether legal or equitable, must relate to cross-demands in the same right, and when there is a mutuality of obligations.' " *Witham* at 562, quoting *Andrews v. State, ex rel. Blair, Superintendent of Banks*, 124 Ohio St. 348 (1931).

{¶ 19} A trial court's decision to set off the parties' judgments is within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. *Barbour* at 98. *See also King v. King*, 11th Dist. No. 2011-G-3046, 2013-Ohio-432; *Krause v. Krause*, 35 Ohio App.3d 18 (12th Dist.1987). An abuse of discretion constitutes more than an error of law or judgment. Rather, it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A decision that is unreasonable is one that has no sound reasoning process to support it. *Griffin v. Dept. of Rehab. & Corr.*, 10th Dist. No. 05AP-858, 2006-Ohio-5206, ¶ 5. A reviewing court applying the abuse of discretion standard may not otherwise substitute its judgment for that of the trial court. *Berk v. Matthew*, 53 Ohio St.3d 161, 169 (1990).

{¶ 20}  "Contempt of court is defined as disobedience of an order of a court.  It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions."  *Windham Bank v. Tomaszcyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus.  "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice."  *Id.* at paragraph two of the syllabus.  "Therefore, since the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge."  *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16 (1988), citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947).

{¶ 21}  Given Travis's repeated refusals to comply with the court order leading up to the magistrate's resolution of the cross-motions for contempt, we do not find the trial court abused its discretion in using offset to enforce the settlement agreement.  Travis's first, second, part of his third and seventh assignments of error are overruled.

{¶ 22}  Travis also raises in his third assignment of error that Nicole could not sign over the title to the 2000 Chevrolet Malibu in lieu of paying a $75 towing bill and still receive $3,200 for the car in the purge order.  Nicole testified the Chevy Malibu was titled in both their names; however, the separation agreement provided Nicole shall retain possession and be solely responsible for its expenses.  (Apr. 16, 2009 Separation Agreement at 4.)  Nicole testified that Travis was driving the car when the police stopped him for expired tags.  However, he did not have a valid driver's license and the car was impounded in April 2012.  (June 18, 2013 Tr. Vol. I at 106; July 9, 2013 Tr. Vol. III at 18.)  The storage fees totaled $5,723 as of June 2013.  Nicole provided evidence that the car was worth $3,200.  (Tr. Vol. I at 106-07; Ex. K.)  Nicole signed the title of the car to the city of Whitehall as payment of the fees.  Travis contends that Nicole relinquished the title to pay the $75 towing fee; however, he testified to the storage fees totaling $5,723.  The car was impounded when Travis was driving it without a valid driver's license and without Nicole's consent.  It was not unreasonable nor an abuse of discretion for the trial court to award Nicole the value of the car in an attempt to enforce the separation agreement as part of the contempt proceeding.  Travis's third assignment of error is overruled.

No. 15AP-891

{¶ 23} By his fourth assignment of error, Travis contends that the requirement that he provide Nicole with a quitclaim deed and signing the title to the Chevrolet Malibu became moot when Nicole surrendered the property. Travis was required to provide a quitclaim deed to their previously shared residence contemporaneously with the execution of the separation agreement on April 15, 2009, while the separation agreement provided that Nicole was to retain possession of the Chevrolet Malibu. Travis failed to execute and provide the quitclaim deed and the car title. The act of failing to provide the deed and the title, while contemptuous, may have become moot when Nicole no longer had the property, the value of the property awarded to Nicole was not moot. The trial court awarded Nicole the value of the property in determining contempt sanctions, but it did not require Travis to provide the quitclaim deed or the title. This caused the issue raised by Travis in his fourth assignment of error to be moot and it is therefore overruled.

{¶ 24} By his fifth assignment of error, Travis contends that the trial court erred by ignoring his testimony that he made direct payments in the amounts of $1,443 on the loan at Buckeye Finance and $2,900 in direct deposit payments as agreed in the separation agreement. The separation agreement provided that Nicole would be responsible for a $1,400 loan from Buckeye Finance. Travis did testify that he made two cash payments to Buckeye Finance totaling $1,443.99. (Tr. Vol. III at 46.) Travis presented Exhibits 10 and 11, which were copies of the payments made on the loan where he circled two payments indicating he made such payments.[2] However, the magistrate specifically found Travis's testimony not credible. (Mag.'s Decision at 12.) Such determinations of credibility and the weight to be given to the evidence are for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Travis's fifth assignment of error is overruled.[3]

{¶ 25} By his sixth assignment of error, Travis contends that the trial court erred by ignoring and restating the testimony of Ferdinand Recke, an agent from the Franklin County Engineer's office regarding the quitclaim deed. Travis argues that he delivered a quitclaim deed to Nicole that was sufficient to remove his name from the real property

---

[2] In October 2009, the balance of the loan was $0, but in November 2009, the balance was $4,708. There was no testimony regarding the reason for the balance increase. (Exs. 10 and 11; Tr. Vol. III at 45-48.)

[3] After a review of the transcript, we cannot find a reference to "$2900.00 in direct deposit payments" that Travis contends he made. Travis made no argument in his brief and did not indicate any transcript references regarding this deposit testimony.

No. 15AP-891

and we assume he further argues that the trial court then erred by finding him in contempt for failing to provide a quitclaim deed to Nicole.

{¶ 26} Two partially completed quitclaim deeds were presented at the hearing. (Ex. C and Ex. 6.) Recke testified that he is the tax map administrator and oversees the tax map department. The Franklin County Recorder's office requires quitclaim deeds to be approved by the tax map department before they can be recorded. The tax map department will not approve a deed without a legal description or a prior recorded deed reference. Exhibit C, dated June 15, 2009, contained neither. Travis's argument seems to be that Exhibit 6, dated August 28, 2012, was sufficient to remove his name from the deed. However, while Exhibit 6 met some requirements to be a recordable quitclaim deed, the testimony was that it still was missing the prior instrument reference.

{¶ 27} The magistrate stated that Recke testified that Exhibit 6 included two of the three missing requirements from Exhibit C, but it still lacked the prior deed reference. The magistrate did not ignore or restate Recke's testimony. The quitclaim deed lacked the requirements necessary to be filed. And the quitclaim deed was dated August 28, 2012, a date not contemporaneous with the date of the separation agreement entered into in April 2009. The trial court did not ignore or restate Recke's testimony and did not err by finding Travis in contempt for failing to provide a quitclaim deed to the real property contemporaneous with the separation agreement. Travis's sixth assignment of error is overruled.

{¶ 28} As we stated previously, Travis presented several arguments that were not contained in his assignments of error, including that the trial court erred in finding that no constructive trust over Nicole's OPERS account should be created and that the magistrate was biased against him. The magistrate found that a constructive trust is inappropriate under these circumstances because Travis owed more than $75,000 to Nicole. Thus, an offset of the obligations was more equitable. The trial court agreed. We find no abuse of discretion in that finding.

{¶ 29} Further, in his objections to the magistrate's decision, Travis sought to vacate the magistrate's decision pursuant to R.C. 2701.03, which addresses the disqualification of common pleas judges. The appropriate remedy was to file an affidavit of disqualification with the Supreme Court of Ohio. However, after a review of the

No. 15AP-891

transcript and the record, we see no evidence of bias on the part of the magistrate. These arguments have no merit.

## IV.  CONCLUSION

{¶ 30} For the foregoing reasons, Travis's seven assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations is affirmed.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

———————