KNOWLTON et al., Appellants,

v.

SCHULTZ et al.; Lindberg et al., Appellees.

[Cite as *Knowlton v. Schultz,* 179 Ohio App.3d 497, 2008-Ohio-5984.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080016.

Decided Nov. 21, 2008.

498

500

502

504

Waite, Schneider, Bayless & Chesley, Stanley M. Chesley, Fay E. Stilz, and Paul M. DeMarco; and McIntosh & McIntosh and Bruce B. McIntosh, for appellants.

Katz, Teller, Brant & Hild, Robert A. Pitcairn, and Cynthia L. Gibson; and Vorys, Sater, Seymour & Pease and Daniel J. Buckley, for appellees.

DINKELACKER, Judge.

{¶ 1} Plaintiffs-appellants, P. Valerie Knowlton and Norma Knowlton, executor of the estate of Peter M. Knowlton (collectively, "the children"), appeal a judgment of the Hamilton County Probate Court in favor of defendants-appellees,

Charles Lindberg and Fifth Third Bank, the executors of the estate of Austin E. Knowlton and the trustees of the Austin E. Knowlton Trust (collectively, "the estate"). We find no merit in the children's 12 assignments of error, and we affirm the trial court's judgment.

{¶ 2} Austin E. "Dutch" Knowlton was a successful businessman, and his estate was worth millions of dollars. His large fortune allowed him to own numerous shares of stock in the Cincinnati Bengals, which was his estate's primary asset. Valerie and Peter were two of his three children. Peter died while the suit was pending, and his estate became a party.

{¶ 3} Knowlton died on June 25, 2003, at the age of 93. A will dated February 7, 1996, was subsequently admitted to probate. That will contained no provision for Knowlton's children or grandchildren. It provided that most of his assets were to pass to the Austin E. Knowlton Foundation either directly or through the Second Restatement of the Agreement of Trust of Austin E. Knowlton. The second restatement named as trustees Lindberg and Robert Fite. Upon Fite's death, Fifth Third became the successor trustee. Lindberg subsequently named his two sons, John and Eric, as his successor trustees.

{¶ 4} The will also named Lindberg and Fite as co-executors and Fifth Third as a successor should either co-executor die. Because Fite was deceased at the time of Knowlton's death, Fifth Third became co-executor.

{¶ 5} The children filed suit, alleging that Lindberg, Knowlton's longtime attorney and friend, had exercised undue influence on him to execute a will beneficial to himself and his law firm, Taft, Stettinius & Hollister. They also alleged that Knowlton's signature on the will was fraudulent.

{¶ 6} Following a lengthy trial, a jury returned a verdict in favor of the estate, upholding the validity of the will. The probate court entered a judgment stating that "the purported Last Will and Testament of Austin E. Knowlton dated February 7, 1996, and admitted to probate by this court on June 30, 2003 *IS* the last Will and Testament of Austin E. Knowlton, deceased." This appeal followed.

## I. Evidence of Undue Influence

{¶ 7} In their first assignment of error, the children contend that the trial court erred in not allowing them to present evidence of undue influence exerted to prevent changes to or revocation of the disputed will, which, according to the law, may continue after the execution of a will. Therefore, the court should have allowed evidence and should not have rejected their proposed jury instruction on that issue. They also argue that evidence of an attorney's failure to inquire about or act upon his client's change in testamentary intent is relevant to the jury's determination of whether undue influence occurred. This assignment of error is not well taken.

## A. West v. Henry—The Law of Undue Influence

[1–3] {¶ 8} In *West v. Henry*,[1] the Ohio Supreme Court set forth the elements of undue influence: (1) a susceptible testator; (2) another's opportunity to exert undue influence; (3) improper influence exerted or attempted; and (4) a result showing the effect of that influence.[2] The admission of a will to probate is prima facie evidence of its validity. The parties contesting the will bear the burden of proving the elements of undue influence.[3]

{¶ 9} In applying these elements, *West* stated, "The mere existence of undue influence or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient to invalidate a will, but such influence must be actually exerted on the mind of the testator with respect to the execution of the will in question; and, in order to invalidate the will, it must be shown that the undue influence resulted in the making of testamentary dispositions which the testator would not otherwise have made."[4]

{¶ 10} "General influence, however strong or controlling, is not undue influence unless brought to bear directly upon the act of making the will."[5] Simply because the testator's will disposes of his property "in an unnatural manner, unjustly or unequally and * * * at variance" with the testator's expressions about relatives or the natural objects of his bounty, does not invalidate the will unless undue influence was actually exercised on the testator.[6] The testator's declarations not made contemporaneously with or near to the will's execution are not admissible as proof of undue influence.[7]

## B. Krischbaum v. Dillon—Attorney as Beneficiary

{¶ 11} *West* remains the law of Ohio on the issue of undue influence.[8] In this case, the children rely heavily on the Supreme Court's later pronounce-

1. (1962), 173 Ohio St. 498, 20 O.O.2d 119, 184 N.E.2d 200.

2. Id. at 510–511, 20 O.O.2d 119, 184 N.E.2d 200; *Miller v. Woodruff* (Jan. 17, 1990), 1st Dist. No. C–880694, 1990 WL 2329.

3. *West*, 173 Ohio St. at 511, 20 O.O.2d 119, 184 N.E.2d 200.

4. Id.

5. Id.

6. Id.

7. Id.

8. See *Redman v. Watch Tower Bible & Tract Soc.* (1994), 69 Ohio St.3d 98, 101–102, 630 N.E.2d 676.

ment in *Krischbaum v. Dillon.*[9]  In that case, the court held that the presumption of validity that attaches when a will is admitted to probate is rebuttable, not absolute.[10]  It further held that a rebuttable presumption of undue influence arises when (1) the relationship of attorney and client exists between a testator and an attorney, (2) the attorney is named as a beneficiary in the will, (3) the attorney/beneficiary is not related by blood or marriage to the testator, and (4) the attorney/beneficiary actively participates in the preparation of the will.[11]

{¶ 12} In so holding, the court stated, "Norms of behavior prescribed in the Code of Professional Responsibility are relevant to the issue of whether an attorney has brought undue influence to bear upon a testator."[12]  It then discussed at length the nature of the attorney-client relationship and the duties the attorney owes the client.  It described how a testator is particularly vulnerable to an attorney's influence.[13]

{¶ 13} Finally, it stated, "[A] disinterested attorney could be expected to pick up cues, even fairly subtle cues, that his client's testamentary intentions may have changed since the will was executed.  The disinterested attorney could then be expected to suggest that his client consider whether to amend the testamentary disposition by executing a codicil or a new will.  On the other hand, an attorney who is named as a beneficiary in the will * * * will have an obvious and powerful disincentive to suggest to his client that it may be an appropriate time to consider revising the will.  When the testator's attorney is a beneficiary of the will, * * * there is even the possibility that the attorney might use his position as the testator's confidential advisor to frustrate a clearly expressed intention to alter the existing testamentary disposition.  This would be a form of undue influence that could be exerted years after the execution of the will naming the attorney as a beneficiary."[14]

## C.  *Krischbaum* Does Not Mandate a Different Result

{¶ 14} The children cite the language about the attorney-client relationship in arguing that the trial court should have allowed them to present evidence

---

9.   (1991), 58 Ohio St.3d 58, 567 N.E.2d 1291.

10.   Id. at 64, 567 N.E.2d 1291.

11.   Id. at paragraph one of the syllabus.

12.   Id. at paragraph four of the syllabus.

13.   Id. at 68–69, 567 N.E.2d 1291.

14.   Id. at 69, 567 N.E.2d 1291.  See also *Redman,* 69 Ohio St.3d at 101, 630 N.E.2d 676.

concerning events that had occurred long after the signing of the will. This argument ignores several things.

{¶ 15} First, the holding in *Krischbaum* is actually "specific and limited."[15] The presumption of undue influence did not arise in this case because Lindberg was not a beneficiary of the will. Relying on cases from other states, the children contend that Lindberg was a beneficiary because he received a benefit from being a trustee of the trust and the executor of the estate. The Ohio Revised Code provides that the term beneficiary "includes, in the case of a decedent's estate, an heir, legatee and devisee and, in the case of a trust, an income beneficiary and a remainder beneficiary."[16] Lindberg was none of these. Under Ohio law, he was a fiduciary, not a beneficiary.[17]

{¶ 16} Second, even *Krischbaum* states that while a "wide range of inquiry" is necessary because undue influence is usually proved by circumstantial evidence, the evidence is still "subject to the general restrictions concerning relevance."[18] The party contesting the will must show undue influence at the time the will was executed.[19] In our view, events that occurred long after the signing of the will have diminished relevance, if any at all.[20] The decision whether evidence is relevant lies within the trial court's discretion.[21]

{¶ 17} Finally, the children's argument ignores the fact that the trial court allowed them to present a significant amount of evidence on events that had occurred after the will's signing. Our review of the record shows that they presented most of the evidence that they wanted. The evidence that the court excluded was of only minimal relevance or was cumulative.

{¶ 18} The only excluded testimony that the children specifically refer to under this assignment of error is that of Sandra Mikos. She would have testified

---

15. *In re Estate of Goehring*, 7th Dist. Nos. 05CO27 and 05CO35, 2007-Ohio-1133, 2007 WL 754745, ¶ 38.

16. R.C. 5812.01(B).

17. See R.C. 2109.01 and 5812.01(C).

18. *Krischbaum*, 58 Ohio St.3d at 66, 567 N.E.2d 1291.

19. *West*, 173 Ohio St. at 502, 20 O.O.2d 119, 184 N.E.2d 200; *Goehring*, 2007-Ohio-1133, 2007 WL 754745, at ¶ 44.

20. See id. at ¶ 44; *Crodian v. Burris* (Apr. 13, 1992), 12th Dist. Nos. CA91–04–064 and CA91–05–082, 1992 WL 75192.

21. *Krischbaum*, 58 Ohio St.3d at 66, 567 N.E.2d 1291; *In re Estate of Adams* (Apr. 28, 1995), 6th Dist. No. L–94–024, 1995 WL 244152.

that in 1998 or 1999, Knowlton had told her that he was not happy with Lindberg's representation and that Knowlton had called Lindberg a "crook" and a "thief." She also testified that she did not discuss his will with him in any detail.

{¶ 19} The trial court excluded the testimony under Evid.R. 403, holding that the danger of unfair prejudice outweighed its probative value. In our view, Mikos's testimony was unrelated to the will and was only marginally relevant at best. The trial court's conclusion that the danger of unfair prejudice outweighed its probative value was not so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion.[22]

{¶ 20} Under the circumstances, the trial court did not err in limiting evidence about events that had occurred long after the will's signing. Consequently, we overrule the children's first assignment of error.

## II. Evidence Before and After the Will's Execution

{¶ 21} The children's second assignment of error is closely related to their first. In this assignment of error, they contend that the trial court erred when it restricted their evidence of undue influence to a period six months before and after the will's signing. They argue that the court should not have imposed a strict time limit, but should have separately considered each incident and should have resolved admissibility questions on an individual basis. This assignment of error is not well taken.

{¶ 22} As we have previously stated, the relevant time period is the time at or near the execution of the will. Courts have held that evidence regarding the exertion of undue influence relating to the execution of a legal document must be confined to a reasonable period before and after the execution of the document.[23] The determination of what constitutes a reasonable time period lies within the trial court's discretion.[24]

{¶ 23} Prior to trial in this case, in response to the parties' numerous motions in limine, a magistrate stated that the court would limit evidence at trial to a period six months before and after the will's execution. The probate court

22. See *Krischbaum*, 58 Ohio St.3d at 66, 567 N.E.2d 1291; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 5 OBR 481, 450 N.E.2d 1140; *Adams*, 6th Dist. No. L–94–024, 1995 WL 244152.

23. *Crodian*, 12th Dist. Nos. CA91–04–064 and CA91–05–082, 1992 WL 75192; *DiPietro v. DiPietro* (1983), 10 Ohio App.3d 44, 46, 10 OBR 52, 460 N.E.2d 657.

24. *Crodian*; *DiPietro* at 46–47, 10 OBR 52, 460 N.E.2d 657; *Oehlke v. Marks* (1964), 2 Ohio App.2d 264, 266, 31 O.O.2d 381, 207 N.E.2d 676.

adopted the magistrate's decision. Though that time frame does seem somewhat arbitrary, we need not decide whether the trial court abused its discretion.

{¶ 24} A ruling on a motion in limine reflects the court's anticipated treatment of an evidentiary issue at trial. It is "a tentative, interlocutory, and precautionary ruling." The trial court may change its ruling on the disputed evidence in the actual context of the trial.[25] In this case, the probate court acknowledged that the rulings on the motions in limine were interlocutory, and it did not enforce the six-month time limit.

{¶ 25} In fact, the court considered all admissibility questions on a case-by-case basis and gave the children great latitude to present evidence of events many years before and after the execution of the will. In the evidentiary rulings that the children cite in their brief, the court excluded evidence on relevance or other appropriate grounds. We find no abuse of discretion, and we overrule the children's second assignment of error.

### III. Expert Testimony on Conflicts of Interest

{¶ 26} In their third assignment of error, the children contend that the trial court erred in excluding expert testimony about Lindberg's and Taft's conflicts of interest in their representation of Knowlton. They argue that the conflicts of interest were directly relevant to the issue of whether Lindberg had exerted undue influence on Knowlton. This assignment of error is not well taken.

{¶ 27} The trial court has broad discretion in the admission of evidence, including expert testimony.[26] The record shows that the children presented three experts on legal ethics who testified at length and expressed their opinions about the alleged conflict of interest.

{¶ 28} The trial court also has a duty to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to "make the interrogation and presentation effective for the ascertainment of the truth" and "to avoid needless consumption of time."[27] The trial court did limit the experts' testimony to some extent to prevent them from going into unnecessary detail. It was simply trying to direct the questioning to areas of inquiry

---

25. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 4, 573 N.E.2d 32; *State v. O'Hara* (June 29, 2001), 1st Dist. Nos. C–000314 and C–000318, 2001 WL 725410.

26. *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 16; *Blair v. McDonagh*, 177 Ohio App.3d 262, 2008-Ohio-3698, 894 N.E.2d 377, ¶ 28.

27. Evid.R. 611(A).

that were relevant and appropriate, and it did not abuse its discretion in limiting the expert testimony.[28]  We overrule the children's third assignment of error.

## IV.  Evidence on the Ultimate Issue

{¶ 29} In their fourth assignment of error, the children contend that the trial court erred in failing to allow their expert to testify to the ultimate issue.  They argue that their legal-ethics expert, Christopher Muth, should have been able to testify that in his opinion, Lindberg had exerted undue influence on Knowlton. This assignment of error is not well taken.

{¶ 30} Evid.R. 704 states, "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."  The trial court has discretion to exclude expert testimony on the ultimate issue when that testimony is not essential to the jury's understanding of the issue and when the jury can come to a correct conclusion without it.[29]

{¶ 31} Part of the reason that the estate objected to the testimony was that the children had difficulty laying a proper foundation for the admission of Muth's opinion on the ultimate issue.  But ultimately, the trial court excluded the testimony because it felt that the issue was "within the experience of the average juror."  Under the facts of this case, we do not hold that this conclusion was so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion.[30]

{¶ 32} Further, even if the court's decision to exclude the testimony had been erroneous, we cannot see how the error affected the children's substantial rights, given the amount of evidence presented on legal ethics and conflicts of interest.  Therefore, any error would have been harmless.[31]  We overrule the children's fourth assignment of error.

---

**28.**  See *Marshall v. Scalf*, 8th Dist. No. 88708, 2007-Ohio-3667, 2007 WL 2052079, ¶ 28–29; *Hammoud v. Cleveland Clinic Found.*, 8th Dist. No. 84979, 2005-Ohio-2617, 2005 WL 1245638, ¶ 20; *Simpson v. Bakers Local 57 of Bakery, Confectionery & Tobacco Workers Internatl. Union* (Nov. 2, 2001), 1st Dist. Nos. C–000691 and C–010008, 2001 WL 1346724.

**29.**  *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph three of the syllabus; *State v. Campbell* (Mar. 15, 2002), 1st Dist. Nos. C–010567 and C–010596, 2002 WL 398029.

**30.**  *Bostic*, 37 Ohio St.3d at 148–149, 524 N.E.2d 881; *Blakemore*, 5 Ohio St.3d at 218, 5 OBR 481, 450 N.E.2d 1140.

**31.**  See *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 164, 17 O.O.3d 98, 407 N.E.2d 490; *Hofmeier v. Cincinnati Inst. of Plastic & Reconstructive Surgery, Inc.* (Jan. 18, 2002), 1st Dist. No. C–000274, 2002 WL 63432, ¶ 13.

## V. Expert Testimony on a Probate Attorney's Standard of Care

{¶ 33} In their fifth assignment of error, the children contend that the trial court erred by excluding the testimony of one of their experts, Joseph Wittenberg. He would have testified regarding the standard of care that a probate attorney owed to an elderly client with mental infirmities and the extra precautions needed in advising an elderly person about his will. The children argue that this testimony was relevant to the issue of whether Lindberg had exerted undue influence on Knowlton. This assignment of error is not well taken.

{¶ 34} The trial court excluded this testimony under Evid.R. 403, finding that the danger of unfair prejudice outweighed its probative value. We agree. This testimony had minimal relevance, at best, particularly given that another attorney, not Lindberg, had drafted the will and had witnessed Knowlton's signature. Further, the actions that the expert declared should have been taken with an elderly client went far beyond those required by the Code of Professional Responsibility, making the testimony highly prejudicial. Under the circumstances, we cannot hold that the trial court abused its discretion in excluding the testimony.[32] We overrule the children's fifth assignment of error.

## VI. Testator's Hearsay Statements

{¶ 35} In their sixth assignment of error, the children contend that the trial court erred in excluding the deceased testator's statements as hearsay. They argue that the statements were admissible under Evid.R. 803(3). This assignment of error is not well taken.

{¶ 36} Evid.R. 803(3) sets forth an exception for the general prohibition against the admission of hearsay for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." The hearsay statement must point towards the future rather than the past, unless it relates to the declarant's will.[33]

{¶ 37} Though they argue the matter only generally, the children point to two specific instances during the trial when the trial court excluded testimony. In the first, Knowlton's longtime friend would have testified that Knowlton had

---

32. See *Krischbaum*, 58 Ohio St.3d at 66, 567 N.E.2d 1291.

33. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 21, 514 N.E.2d 394; *State v. Fort* (May 10, 1990), 8th Dist. No. 56922, 1990 WL 61716.

told him that Jimmy Grimes, Knowlton's caretaker for many years, was "taken care of."

{¶ 38} This hearsay statement points to the past rather than the future. Therefore, they were not admissible unless they related to the execution, revocation, identification, or terms of the will. The trial court found that they did not. We agree. Neither of these witnesses was specifically testifying about the will when the children's counsel asked them about these hearsay statements. Under the circumstances, we cannot hold that the trial court's decision to exclude the statements was an abuse of discretion.

{¶ 39} In the second instance the children cite, Valerie Knowlton would have testified that her father had told her that she would receive income from a trust after he died. This statement does point to the future rather than the past and was admissible under the hearing exception in Evid.R. 803(3). But in the context of the entire trial, the exclusion of that statement did not affect the children's substantial rights. Therefore, any error was harmless.[34]

{¶ 40} The children further argue that "the defendants were allowed, without restriction, to present such evidence," though they do not identify any particular statements. Nevertheless, Evid.R. 804(B)(5) sets forth a separate hearsay exception for a decedent's statements when offered by the decedent's estate. This exception is for the benefit of a decedent's representative to permit the decedent to "speak from the grave" to rebut testimony from an adverse party that was formerly inadmissible.[35] This hearsay exception does not apply to the party opposing the decedent.[36] Consequently, circumstances could arise in which the estate could admit hearsay statements into evidence but the adverse party could not. We overrule the children's sixth assignment of error.

### VII. Stricken Testimony

{¶ 41} In their seventh assignment of error, the children contend that the trial court erred by admitting the testimony of the estate's witness Sonya Albery, when the estate had failed to properly disclose the subject of her testimony. They also argue that the trial court erred in failing to timely instruct the jury to disregard her testimony when she refused to answer questions on cross-examina-

34. *O'Brien*, 63 Ohio St.2d at 164, 17 O.O.3d 98, 407 N.E.2d 490; *Hofmeier*, 2002 WL 63432, at ¶ 13.

35. *Brooks v. Bell* (Apr. 10, 1998), 1st Dist. No. C–970548, 1998 WL 165024; *Testa v. Roberts* (1988), 44 Ohio App.3d 161, 167, 542 N.E.2d 654.

36. *Hamilton v. Hector* (1997), 117 Ohio App.3d 816, 818–819, 691 N.E.2d 745.

tion. Though we have reservations about what occurred with this witness, we ultimately find that the assignment of error is not well taken.

{¶ 42} Albery was one of Knowlton's financial advisors and also a friend. Prior to trial, the estate had disclosed that Albery would testify "concerning her observations of Mr. Knowlton as an independent and intelligent business person during the course of their long personal friendship and during her work with him as his financial advisor, his relationship with the Lindberg family, that his mental acuity remained sharp until the time of his death, that he was not susceptible to undue influence, his estranged relationship with his children, his thoughts relating to the establishment of a charitable foundation and his estate plan."

{¶ 43} At trial, the estate attempted to elicit testimony from Albery about an undisclosed dinner conversation with Knowlton on the day he had signed his will. The children objected because her testimony was hearsay and because the estate had failed to disclose that she would testify about the conversation. The trial court expressed concern that disclosure about her testimony had not been more specific, but stated, "I think it's general enough to allow some testimony."

{¶ 44} Considering the hearsay objection, the court limited Albery's testimony. It stated, "I think you can get out * * * his state of mind was such that he did let her know that he executed his will, number one. Details of the will, beyond that, except for rebuttal as it relates to having Valerie in the will, is permissible, but nothing more than that." Albery went on to testify that Knowlton had stated that he had signed a will that day, and that he had not left any money to Valerie, and why.

{¶ 45} We have grave reservations about the estate's failure to disclose that Albery would testify about this conversation. Its claim that the children were not "sandbagged" because it had disclosed that Albery would testify about "his estate plan" rings hollow. The purpose of discovery in the civil rules is to prevent unfair surprise,[37] and the estate should have disclosed the substance of that conversation.

{¶ 46} Nevertheless, the regulation of discovery lies within the trial court's discretion.[38] We need not determine whether the court abused that discretion in this case because the events that occurred next rendered that question moot.

---

37. *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 370, 28 OBR 429, 504 N.E.2d 44; *Brokamp v. Mercy Hosp.* (1999), 132 Ohio App.3d 850, 860, 726 N.E.2d 594.

38. *State ex rel. Mason v. Burnside,* 117 Ohio St.3d 1, 2007-Ohio-6754, 881 N.E.2d 224, ¶ 11; *Brokamp* at 860, 726 N.E.2d 594.

{¶ 47} On cross-examination, the children asked Albery if, at a later time, she had discussed with Lindberg Knowlton's inability to handle his own affairs. She stated, "I'm sorry. But I do not have representation in this courtroom for anything that is discussed after 1995 and 1996. Anything that happens after that time, I will not discuss." The children moved to strike her testimony.

{¶ 48} Since it was the end of the day, the court excused the jury. A heated discussion ensued. Albery indicated that the estate's counsel had told her that she would not have to testify about matters that had occurred outside of 1995 and 1996. She stated that her refusal to testify was not based on her Fifth Amendment privilege against self-incrimination, but on the advice of counsel for her employer. The children specifically asked on several occasions that the court strike her testimony in its entirety.

{¶ 49} The court took the issue under advisement and adjourned for the day. The following morning, the court heard more argument. It told the jury that "there are legal questions that haven't been resolved and so Ms. Sonya Albery has been excused for the moment and we'll let you know in due course what the situation is." Then the trial continued.

{¶ 50} A few days later, the trial court instructed the jury, "I just want to bring to the attention of the jury that based on legal issues, the witness, Sonya Albery, who was here on Monday, will not be back for legal reasons and you are instructed to disregard and strike from your mind and not consider in any respect her testimony." The children did not object in any way.

{¶ 51} We find this turn of events astounding. Counsel certainly should not have told the witness that she would not have to testify about events that had occurred after 1995 and 1996. Beyond that, we have never seen a witness blatantly refuse to testify for any reason other than the assertion of the privilege against self-incrimination, which was not involved here. If Albery was asserting another privilege, the record is not clear what privilege it was or how it applied, and the issue should have been raised long before she got to the witness stand. The trial court would have been justified in ordering her to testify and finding her in contempt if she did not.

{¶ 52} Nevertheless, the children ultimately got the relief that they sought. If they felt that Albery's testimony was unfairly prejudicial and tainted the proceedings, they could have moved for a mistrial, but they did not. They repeatedly asked that the court strike Albery's testimony in its entirety, which is what the trial court eventually did. It instructed the jury to disregard her testimony, and we must presume that the jury followed that instruction.[39] We do not believe

---

39. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph four of the syllabus; *Cincinnati v. Banks* (2001), 143 Ohio App.3d 272, 289, 757 N.E.2d 1205.

that the timing unduly prejudiced the children. The trial court has broad discretion to control the proceedings before it,[40] and we do not hold in this instance that the trial court abused its discretion. We overrule the children's seventh assignment of error.

## VIII. Reliability of Handwriting Expert's Testimony

{¶ 53} In their eighth assignment of error, the children contend that the trial court erred in failing to strike the testimony of the estate's handwriting expert, Mary Kelly. They argue that she used "known samples" provided for her by the defense to compare to the signature on the will instead of using independently verified "known signatures." This assignment of error is not well taken.

{¶ 54} Evid.R. 702(C) provides that a witness may testify as an expert if "[t]he witness' testimony is based on reliable scientific, technical, or other specialized information." The court must act as a "gatekeeper" to ensure that the proffered scientific, technical, or other specialized information is sufficiently reliable.[41]

{¶ 55} Knowledge based on unreliable techniques or principles cannot, as a matter of law, assist the trier of fact to understand the evidence or to determine a fact in issue.[42] Whether the expert's opinion is admissible depends on whether the principles and methods the expert employed to reach his or her opinion were reliable, not on whether his or her conclusions are correct.[43]

{¶ 56} Nevertheless, once the testimony meets the reliability threshold, the trier of fact determines the weight to be given to expert testimony. Any weakness in its factual underpinnings goes to its weight and credibility, rather than to its admissibility.[44]

{¶ 57} Kelly, an undisputed expert with many years' experience, testified fully about her methods. She stated that she had compared the disputed

---

40. *State ex rel. Butler v. Demis* (1981), 66 Ohio St.2d 123, 128, 20 O.O.3d 121, 420 N.E.2d 116; *State v. Brewster*, 1st Dist. Nos. C–030024 and C–030025, 2004-Ohio-2993, 2004 WL 1284008, ¶ 70.

41. *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 17; *State v. Rangel* (2000), 140 Ohio App.3d 291, 295, 747 N.E.2d 291.

42. *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 614, 687 N.E.2d 735; *Campbell*, 2002-Ohio-1143, 2002 WL 398029.

43. *Valentine* at ¶ 16; *Campbell*, 2002 WL 398029.

44. *Seminatore v. Climaco, Climaco, Lefkowitz & Garofoli Co., L.P.A.* (Dec. 7, 2000), 8th Dist. No. 76658, 2000 WL 1847565; *Rangel*, 140 Ohio App.3d at 295–296, 747 N.E.2d 291.

signatures with "known signatures," which was the standard procedure for verifying signatures. She had obtained the documents that contained the "known signatures" from a paralegal at the Taft firm who was familiar with the case and with Knowlton's signature. Kelly examined numerous authenticated documents and stated that it was acceptable to assume the authenticity of the known documents.

{¶ 58} Our review of the record shows that Kelly's methods were sufficiently reliable to meet the admissibility threshold. Any weakness in her methods went to her testimony's weight and credibility, not to its admissibility. Therefore, the trial court did not err in admitting her testimony into evidence, and we overrule the children's eighth assignment of error.

### IX. Hypothetical Questions

{¶ 59} In their ninth assignment of error, the children contend that the trial court erred in failing to strike the testimony of the estate's expert Geoffrey Stern. They argue that Stern's opinion was based upon incorrect hypothetical assumptions that had no evidentiary support. This assignment of error is not well taken.

{¶ 60} Under Evid.R. 705, an expert may give his or her opinion in response to a hypothetical question. " 'The hypothesis upon which an expert witness is asked to state an opinion must be based upon facts within the witness' own personal knowledge or upon facts shown by other evidence.' "[45] A hypothetical question is improper when it assumes facts not in evidence. Whether a hypothetical question is proper lies within the trial court's discretion.[46]

{¶ 61} The hypothetical question in this case asked Stern to assume that both the Brown family, the majority shareholders in the Cincinnati Bengals, and Knowlton, as minority shareholder, had consented to the Taft firm's representing them at the same time, and that their consent was reflected in various documents submitted into evidence. Despite the children's claim to the contrary, all of these facts were in evidence at the trial.

{¶ 62} Also during the hypothetical, the estate's counsel had asked Stern to assume that "Mr. Lindberg was a shrewd and capable man, an excellent negotiator, power and strong willed." As the children point out, this was a misstatement, and counsel meant to refer to Knowlton. The jury would not have

---

45. *Davis v. Excel Extrusions* (1996), 112 Ohio App.3d 425, 427, 679 N.E.2d 14, quoting *Burens v. Indus. Comm.* (1955), 162 Ohio St. 549, 55 O.O. 436, 124 N.E.2d 724, paragraph one of the syllabus.

46. *Blake v. Fligiel* (Dec. 3, 1998), 8th Dist. No. 73329, 1998 WL 842081; *State v. Minor* (1988), 47 Ohio App.3d 22, 26, 546 N.E.2d 1343.

been misled by the obvious misstatement, and the children were not prejudiced. Under the circumstances, the trial court did not abuse its discretion in allowing the expert's response to the hypothetical question into evidence. We overrule the children's ninth assignment of error.

### X.   Failure to Allow Rebuttal Testimony

{¶ 63} In their tenth assignment of error, the children contend that the trial court erred in refusing to allow them to present a rebuttal witness. They argue that the plaintiff, who bears the burden of proof, has a right to present rebuttal testimony. This assignment of error is not well taken.

{¶ 64} R.C. 2315.01(A) provides for the order of trial proceedings and allows for rebuttal testimony. But contrary to the children's assertion, it does not grant an absolute right to present rebuttal testimony. It merely describes the regular order in which the parties present evidence and argument. The decision whether to admit rebuttal testimony lies within the trial court's discretion.[47]

{¶ 65} The children wanted to call Scott Greenwood, who was a partner at Taft during the time in question. They wanted to have him rebut testimony by Lindberg and other estate witnesses that Taft's managing partner did not have much authority. But at the time, Greenwood was out of the country, and the children wanted to continue the trial for his testimony, even though they described him as a "10–minute witness." The trial court stated, "We're not going to hold it over to Monday for another witness."

{¶ 66} Rebuttal testimony should relate to matters that are first addressed in an opponent's case-in-chief.[48] Lindberg had testified about his role as managing partner in the children's case-in-chief when he was called on cross-examination. Therefore, testimony on that issue would not have been proper rebuttal testimony.

{¶ 67} More importantly, as the trial court indicated, they were "getting further and further afield." The testimony had minimal relevance, and the trial court's decision not to continue an already lengthy trial for a "10–minute witness" was not an abuse of discretion. We overrule the children's tenth assignment of error.

---

47.   *Bowden v. Annenberg*, 1st Dist. No. C–040499, 2005-Ohio-6515, 2005 WL 3338935, ¶ 57; *Seaford v. Norfolk S. Ry. Co.*, 159 Ohio App.3d 374, 2004-Ohio-6849, 824 N.E.2d 94, ¶ 48, reversed on other grounds, 106 Ohio St.3d 430, 2005-Ohio-5407, 835 N.E.2d 717.

48.   *Phung v. Waste Mgt., Inc.* (1994), 71 Ohio St.3d 408, 410, 644 N.E.2d 286; *Bowden* at ¶ 57.

## XI. Conduct of the Trial

{¶ 68} In their 11th assignment of error, the children contend that the trial court failed to control the proceedings. They argue that the trial court allowed the estate's counsel to disrupt the proceedings with almost constant objections, improperly commented on evidence and restated questions to witnesses, and inequitably applied the rules of evidence. This assignment of error is not well taken.

{¶ 69} The trial court must exercise reasonable control over the presentation of evidence to "(1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment and undue embarrassment."[49] Further, the court may interrogate witnesses in an impartial manner.[50] Decisions regarding the mode of interrogation of witnesses lie within the trial court's discretion.[51] Above all, the trial court must maintain an appearance of impartiality so that litigants believe that they can have a fair trial.[52]

{¶ 70} We first note that the children did not object to many of the incidents of which they now complain. This failure to object deprived the trial court of the opportunity to take corrective measures, if needed, and waived the error on appeal.[53]

{¶ 71} Our review of the record shows that the trial court acted impartially and did an admirable job of controlling this extensive trial. The trial court ruled objectively on all evidentiary issues. Though at some points the estate did object excessively, the court overruled many of those objections. In fact, throughout the trial, it overruled as many of the estate objections as it sustained, and it sustained many of the children's objections. When the court asked questions of witnesses, it was usually seeking to clarify an issue. Under the circumstances, we cannot hold that the trial court abused its discretion in its conduct of the trial. We overrule the children's 11th assignment of error.

---

49. Evid.R. 611(A).

50. Evid.R. 614(B); *Vermeer of S. Ohio, Inc. v. Argo Constr. Co., Inc.* (2001), 144 Ohio App.3d 271, 275, 760 N.E.2d 1.

51. *Mentor–on–the–Lake v. Giffin* (1995), 105 Ohio App.3d 441, 448, 664 N.E.2d 557; *State v. Davis* (1992), 79 Ohio App.3d 450, 453–454, 607 N.E.2d 543.

52. *Mentor–on–the–Lake* at 449, 664 N.E.2d 557.

53. *In re Disqualification of Solovan*, 100 Ohio St.3d 1214, 2003-Ohio-5484, 798 N.E.2d 3, ¶ 7; *Mentor–on–the–Lake* at 448, 664 N.E.2d 557.

## XII.   Jury Instructions

{¶ 72} In their 12th assignment of error, the children contend that the trial court erred in failing to give two of their proposed jury instructions.  They argue that the jury should have been instructed about the presumption of undue influence that arises when an attorney is involved in drafting the will and obtains a beneficial interest.  They also argue that the court should have instructed the jury about the norms of behavior set forth in the Code of Professional Responsibility because they were directly relevant to the issue of whether an attorney had exercised undue influence on the testator.  This assignment of error is not well taken.

{¶ 73} Generally, the trial court should give jury instructions requested by the parties if they are correct statements of law applicable to the case and if reasonable minds could reach the conclusions sought by the instructions.[54]  But the court has discretion to refuse to give a proposed jury instruction that is redundant or immaterial to the case.[55]

{¶ 74} The children's proposed jury instruction on the presumption of undue influence as stated in *Krischbaum* was not applicable to the case.  As we stated in discussing the first assignment of error, that presumption did not apply because Lindberg was not a beneficiary.  Consequently, the trial court did not err in failing to give that instruction.

{¶ 75} As to their proposed instruction on the Code of Professional Responsibility, the record shows that the trial court was going to give its own instruction on the Code of Professional Responsibility.  The court need not give an instruction in the precise language requested by its proponent.  If the court's instruction correctly states the law pertinent to the issues raised in the case, the court's use of its own instruction is not error.[56]  The record does not contain the court's actual instruction, and we must presume its regularity.[57]

{¶ 76} The children stated that if the court would not give their proposed instruction, they did not want any instruction at all on professional responsibility.

---

54.   *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828; *Gates v. Owens–Corning Fiberglas Corp.* (Oct. 3, 1997), 1st Dist. Nos. C–960369 and C–960416, 1997 WL 610627.

55.   *Bostic*, 37 Ohio St.3d 144, 524 N.E.2d 881, at paragraph two of the syllabus; *Gates*.

56.   *Gates*; *Atkinson v. Internatl. Technegroup, Inc.* (1995), 106 Ohio App.3d 349, 365, 666 N.E.2d 257.

57.   See *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384; *Firstar Bank, N.A. v. First Serv. Title Agency, Inc.*, 1st Dist. No. C–030641, 2004-Ohio-4509, 2004 WL 1906851, ¶ 6.

Therefore, the court did not give an instruction on that issue. Under the "invited error" doctrine, a party may not take advantage of an error that the party invited or induced the court to make.[58] Consequently, we overrule the children's 12th assignment of error.

### XIII. Summary

{¶ 77} In sum, we find no merit in the children's arguments. We find no errors by the trial court that caused material prejudice to the children or denied them a fair trial. Consequently, we overrule their 12 assignments of error and affirm the trial court's judgment.

Judgment affirmed.

HILDEBRANDT, P.J., and WALSH, J., concur.

JAMES E. WALSH, J., of the Twelfth Appellate District, sitting by assignment.

---

58. *Hal Artz Lincoln–Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590, paragraph one of the syllabus; *Blair,* 177 Ohio App.3d 262, 2008-Ohio-3698, 894 N.E.2d 377, at ¶ 39.