[Cite as *Young v. Kaufman*, 2020-Ohio-3283.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| LAUREL K. YOUNG, ET AL., | : | |
| Plaintiffs-Appellants, | : | No. 108719 |
| v. | : | |
| JOSH S. KAUFMAN, ET AL., | : | |
| Defendants-Appellees. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 11, 2020

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2014ADV201972

### *Appearances:*

Kushner & Hamed Co., L.P.A., Michael R. Hamed, and Philip S. Kushner, *for appellants*.

Walter Haverfield, L.L.P., John E. Schiller, and Jamie A. Price, for *appellees* Josh Kaufman, Kim Kaufman, and Doug Kaufman.

Reminger Co., L.P.A., Adam M. Fried, and Leon A. Weiss, *for appellee* Josh Kaufman.

FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Plaintiffs-appellants Laurel Young ("Lori") and James Kaufman ("Jim") (collectively, "appellants") appeal from the trial court's judgment in favor of defendants-appellees Josh Kaufman ("Josh"), Kim Kaufman ("Kim"), and Doug Kaufman ("Doug") in their will contest action challenging their deceased mother, Joyce Kaufman's ("Joyce") estate plan. Appellants argue that the trial court erred by excluding statements made by Joyce pertaining to her estate plan and the circumstances under which the estate plan was executed. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} Appellants and appellees are siblings and Joyce's children. This appeal involves the proceedings in the trial court on remand from this court in *Young v. Kaufman*, 2017-Ohio-9015, 101 N.E.3d 655 (8th Dist.) (hereinafter "*Young v. Kaufman I*"). [1] In *Young v. Kaufman I*, this court reversed the trial court's judgment granting summary judgment in favor of appellees on appellants' will contest and removal claims.

{¶ 3} In 1993, Joyce executed an estate plan that first disposed of her assets to her husband and then to her five children. In 1999, she modified her estate plan, excluding Jim as a beneficiary, except for a $1,000 bequest. In 2000, Joyce made additional changes to her estate plan. Pursuant to the 2000 modifications, Joyce's

---

[1] For a full recitation of the factual and procedural history in this case, *see Young v. Kaufman I*.

personal property was to be disposed of at Kim's discretion, after which Lori, Doug, Kim, and Josh were to receive the balance of Joyce's assets. Joyce also executed a durable power of attorney in 2000. She appointed Doug and Kim jointly as her attorneys-in-fact.

{¶ 4} Joyce took steps to revise her estate plan in 2009. According to the attorneys that initially worked on the revision and an accountant that assisted Joyce with tax-related matters, Joyce only wanted three of her children — Josh, Kim, and Doug — to inherit under the new estate plan. *See Young v. Kaufman I* at ¶ 9-10. "On December 10, 2010, Joyce signed her last will and testament (the '2010 will') and the third amendment to declaration of trust (Joyce S. Kaufman Revocable Trust Agreement) dated December 10, 2010 (the '2010 trust') (collectively, the '2010 estate plan'), which excluded Jim and Lori as beneficiaries." *Id.* at ¶ 23.

{¶ 5} In 2013, after being diagnosed with lung cancer, Joyce took steps to revise her estate plan again. *Young v. Kaufman I*, 2017-Ohio-9015, 101 N.E.3d 655, at ¶ 28. According to the attorney that began working with Joyce in the summer of 2010, Joyce wanted to revise her estate plan at that time to enable all five children to share the assets of her estate.

> In mid-July 2013, Joyce met with all five of her children (the "July 2013 family meeting"). Jim testified that during this meeting, Joyce told each of her children that she wanted them all "to get along," that she wanted her estate to be divided equally among them and that she wanted the proceeds of her life insurance policies to be used to pay her estate taxes. Jim testified that Joyce made all of her children promise that they would follow her wishes. Joyce died before any new estate plan was finalized or executed.

On April 7, 2014, appellees filed an application for authority to administer Joyce's estate based on the 2010 estate plan and the will was admitted to probate. Josh, Kim and Doug were designated co-executors under the will and co-trustees of the trust.

*Id.* at ¶ 32-33.

{¶ 6} Appellants commenced their will contest action on October 10, 2014. Appellants filed a complaint against appellees asserting (1) a will contest claim and (2) a claim to remove Josh and Kim as co-executors and co-trustees of Joyce's 2010 estate plan. In their will contest claim, appellants alleged that Joyce's 2010 estate plan is not valid because it was the product of undue influence by Josh and Kim.

Appellants alleged that the 2010 estate plan did not reflect Joyce's testamentary intent and that Joyce's true intent — as she expressed to all of her children shortly before her death — was for her assets to be divided equally among her five children. Appellants alleged that Josh and Kim had improperly influenced Joyce to exclude them under her 2010 estate plan and had impeded Joyce's efforts to revise her estate plan in 2013 to include all five children. Appellants further alleged that after Joyce's death, Kim and Josh took various actions to benefit themselves to the detriment of appellants and Joyce's estate, including converting Joyce's personal property to themselves, locking appellants out of their mother's homes and failing to use the life insurance proceeds to pay estate taxes. Appellants sought (1) a declaratory judgment that the 2010 will and trust be set aside as void due to appellees' self-dealing and/or exertion of undue influence over Joyce, (2) removal of Josh and Kim as co-executors and co-trustees due to their alleged breaches of fiduciary duty, (3) recovery of their attorney fees and costs and (4) "any other relief that the Court deems just and proper."

*Id.* at ¶ 34.

{¶ 7} The will contest and removal claims were bifurcated on December 9, 2015. In bifurcating appellants' claims, the trial court determined that the only issues relevant to appellants' will contest claim were (1) Joyce's mental condition in

December 2010 when she executed the 2010 estate plan, and (2) whether Joyce's 2010 estate plan was executed as a result of undue influence. The trial court held that appellants' removal claim would fail for lack of standing unless appellants prevailed on their will contest claim, demonstrating that they were interested parties to Joyce's estate.

{¶ 8} On April 28, 2016, appellees filed a motion for partial summary judgment on appellants' will contest claim. Therein, appellees argued that they were entitled to judgment as a matter of law because Joyce did not lack testamentary capacity at the time she executed the 2010 estate plan, and that the 2010 estate plan was not the product of undue influence exercised by Josh or Kim.

{¶ 9} Appellants filed a brief in opposition, arguing that the "full evidentiary record" shows that at the time Joyce executed her 2010 estate plan, Josh and Kim had a confidential relationship with Joyce and exercised undue influence "to skew her true estate wishes in their favor." *Young v. Kaufman I*, 2017-Ohio-9015, 101 N.E.3d 655, at ¶ 38. Appellants argued that Josh's and Kim's confidential relationship with Joyce gave rise to a presumption of undue influence. Finally, appellants asserted that "genuine issues of material fact existed regarding Joyce's 'true wishes' with respect to her 2010 estate plan, her susceptibility to undue influence and whether, in fact, she was unduly influenced." *Id.* Regarding the "full evidentiary record" at the summary judgment stage, and the evidence upon which appellants opposed appellees' summary judgment motion on the will contest claim, appellants submitted the following:

excerpts of the depositions of Lori, Jim, Josh, Kim, Gariepy, Gross, Oscar and Baptiste, copies of the 1993 estate plan, the 1999 and 2000 modifications to the 1993 estate plan and the 2010 estate plan, portions of Joyce's cell phone records, copies of Hahn Loeser's billing records, copies of documents relating to various promissory notes, portions of Gariepy's notes, Gross' February 10, 2009 memorandum, Gariepy's communications with the Kaufman family relating to Joyce's estate plan and Josh's responses in 2010 and 2011, a KeyBank power-of-attorney designation and payable-on-death designation in favor of Kim dated November 25, 2010, email communications among Hahn Loeser attorneys regarding Joyce's estate planning work from 2010, an affidavit from attorney Leslie Vargo, Lori's counsel, authenticating certain documents and an affidavit and expert report from attorney Michael Murman, addressing the conduct of Joyce's attorneys, her attorneys' alleged conflicts of interest and Joyce's alleged susceptibility to undue influence by her attorneys.

*Id.* at ¶ 38, fn. 10.

{¶ 10} On June 24, 2016, the trial court granted appellees' motion for partial summary judgment on the will contest claim. The trial court concluded,

appellants had failed to present any evidence establishing that Joyce was susceptible to undue influence at the time she executed the 2010 estate plan, that there was no evidence of any connection between Kim's actions and the 2010 estate plan and that the case law did not support a finding that Josh was in a confidential relationship with Joyce so as to give rise to a presumption of undue influence. The [trial] court further found that undisputed evidence established that Joyce's 2010 estate plan reflected her "consistent stated objectives over a period of time," that there was no evidence that Josh or Kim exerted any influence over Joyce that made her exclude Jim and Lori from her estate plan and that there were no genuine issues of material fact as to Joyce's testamentary capacity at the time she executed her 2010 estate plan.

*Id.* at ¶ 39. Appellants filed a motion for reconsideration that the trial court denied.

{¶ 11} Appellees filed a motion for summary judgment on the remaining removal claim in July 2016. Therein, appellees argued that based on the trial court's judgment in favor of appellees on appellants' will contest claim, appellants failed to

establish that they were beneficiaries of the 2010 estate plan, and as a result, appellants lacked standing to pursue their removal claim. Appellees also asserted that appellants failed to present any evidence of any self-dealing or that appellees breached a fiduciary duty.

{¶ 12} Appellants filed a brief in opposition to appellees' summary judgment motion on the removal claim. Appellants argued an oral trust was created at the July 2013 family meeting, during which Joyce purportedly advised the five children that she wanted them to share her estate assets equally. Appellants maintained that they did, in fact, have standing to pursue the removal claim based on the oral trust. Appellants attached the following evidence to their brief in opposition: (1) an affidavit from Jim, detailing the events leading up to the July 2013 family meeting and the steps taken by Joyce in 2013 to revise her estate plan, and (2) several emails relating to Joyce's intent to revise her estate plan in 2013, allowing Jim and Lori to share in her estate.

{¶ 13} On January 5, 2017, the trial court granted appellees' motion for summary judgment on the removal claim, rejecting appellants' assertion that they had standing to pursue their removal claim on the basis of their "newly created oral trust theory[.]" *Young v. Kaufman I*, 2017-Ohio-9015, 101 N.E.3d 655, at ¶ 42. In granting appellees' motion, the trial court explained,

> (1) appellants had failed to plead the existence of an oral trust or that they were beneficiaries of Joyce's estate by virtue of an oral trust in their complaint, (2) had made no argument, when opposing summary judgment on the [will] contest claim, that the 2010 estate plan was invalid due to the creation of a subsequent oral trust and the probate

court had already determined, in granting appellees' motion for summary judgment on the contest claim, that the 2010 will and trust were valid and (3) could not establish the existence of an oral trust based on the applicable law.

*Id.*

{¶ 14} Appellants filed appeals challenging the trial court's summary judgment rulings in favor of appellees, which this court consolidated for purposes of disposition. On appeal, this court acknowledged that based on the evidence in the record, there is no indication that Joyce had any diminished mental or physical capacity, nor any significant health issues when she executed the 2010 estate plan in December. This court explained, "[t]he evidence presented by both parties showed that as of December 2010, Joyce was in good health, astute, intelligent, independent and took care of her own needs. Although Joyce retained various advisors to assist her with financial, legal and business matters, the record reflects that she generally made her own decisions." *Id.* at ¶ 54.

{¶ 15} On appeal, appellants argued that Josh and Kim had a confidential or fiduciary relationship with Joyce that gave rise to a presumption of undue influence. This court rejected appellants' argument as it pertained to Kim. *Id.* at ¶ 61-62. However, this court found merit to appellants' argument as it pertained to Josh. This court explained,

> [b]ased on Josh's role as intermediary and spokesperson for his mother with respect to her 2010 estate plan, we believe reasonable minds could disagree as to whether Josh had a confidential relationship with Joyce that would entitle appellants to a presumption of undue influence by Josh. Although there is evidence in the record upon which this presumption could potentially be rebutted, we find that genuine issues

of fact exist with respect to whether Josh's relationship with Joyce was free of undue influence and whether Joyce acted voluntarily, with full knowledge and understanding of her actions and their consequences, in executing her 2010 estate plan. Accordingly, the probate court erred by not affording appellants the opportunity to litigate the presumption of undue influence in granting summary judgment on the contest claim.

*Id.* at ¶ 64, citing *Sigler v. Burk*, 3d Dist. Crawford No. 3-16-19, 2017-Ohio-5486, ¶ 86-90.

{¶ 16} This court concluded that the trial court erred in granting summary judgment in favor of appellees on appellants' will contest claim because a genuine issue of material fact existed as to the validity of Joyce's 2010 estate plan. *Young v. Kaufman I*, 2017-Ohio-9015, 101 N.E.3d 655, at ¶ 65. Because summary judgment was improper on the will contest claim, this court also held that the trial court erred in granting appellees' motion for summary judgment on the removal claim because a genuine issue of material fact existed as to whether appellants have standing. *Id.* This court reversed the trial court's judgment granting summary judgment in favor of appellees and remanded the matter to the trial court "for further proceedings consistent with this opinion." *Id.* at ¶ 66.

{¶ 17} Appellees filed an appeal to the Ohio Supreme Court challenging this court's judgment. *Young v. Kaufman*, 152 Ohio St.3d 1465, 2018-Ohio-1795, 97 N.E.3d 501. In May 2018, the Ohio Supreme Court declined to accept the matter for review.

{¶ 18} The matter was returned to the trial court's docket on May 30, 2018, and pretrial proceedings resumed. Appellants filed a "submission concerning legal

and factual issues to be addressed at will contest trial" on September 25, 2018. Therein, appellants asserted that this court's opinion in *Young v. Kaufman I* provided "a roadmap of the legal and factual issues to be addressed at trial." Appellants specifically referenced evidence pertaining to 2013 after Joyce was diagnosed with cancer, including (1) the July 2013 family meeting during which Joyce met with all five children and (2) Jim's testimony that Joyce indicated she wanted her estate to be divided equally among all five children. Appellants indicated that they "are prepared to stipulate to all of the facts" set forth in this court's opinion.

{¶ 19} Appellees did not enter a pretrial stipulation to the evidence, including the evidence pertaining to Joyce's statements in 2013, that appellants sought to introduce at trial. Rather, in response to appellants' September 25, 2018 brief, the parties filed motions in limine regarding evidence in anticipation of trial and Joyce's purported statements in 2013.

{¶ 20} Appellants filed motions in limine to (1) "admit testimony as to the intent of [Joyce] regarding her estate plan"; (2) "preclude authentication of documents obtained by defendant's attorney from Kim Kaufman's house"; (3) "to preclude testimony regarding [Joyce's] intent and knowledge from attorney Stephen H[.] Gariepy"; and (4) "admit admissions against interest against [Josh]." Regarding Josh's purported admissions, appellants alleged that Josh admitted to attorneys Gariepy and Gary Zwick,[2] in 2013 and 2014, that Joyce wanted all five

---

[2] Zwick represented co-executors Josh, Kim, and Doug.

children to inherit equally. *See* appellants' brief in opposition to appellees' motion for summary judgment on the removal claim, filed September 2, 2016.

{¶ 21} Appellees filed motions in limine to (1) exclude the expert report and testimony of appellants' expert witness in the field of legal ethics;[3] (2) "exclude evidence after February 1, 2011"; and (3) "exclude evidence of an alleged oral trust." In opposing appellees' motion in limine to exclude evidence after February 1, 2011, appellants argued that the trial court would be disregarding this court's judgment in *Young v. Kaufman I* by excluding the evidence.

{¶ 22} The trial court granted appellees' motion to exclude evidence after February 1, 2011, in part. The trial court precluded appellants from presenting arguments or evidence at trial regarding statements and activities in 2013 related to Joyce's 2010 estate plan. The trial court determined that appellants would be precluded from presenting arguments or evidence occurring after December 10, 2010, unless the evidence is directly related to (1) whether Josh was in a confidential or fiduciary relationship with Joyce, and (2) whether Joyce's 2010 estate plan was the product of undue influence. The trial court determined that "although evidence of activity in 2013 is not relevant and not admissible at trial," February 1, 2011, was an arbitrary cutoff date. The court concluded that it would not use a specific cutoff date; rather, it would limit admissibility of evidence pertaining to events that occurred after December 10, 2010, when Joyce executed the 2010 estate plan, to

---

[3] In addition to the will contest action, appellants filed a legal malpractice action against the attorneys that handled Joyce's estate planning.

evidence that was directly relevant to (1) whether Josh was in fiduciary relationship with Joyce and (2) whether Joyce's 2010 estate plan was the product of undue influence.

{¶ 23} The trial court granted appellees' motion to "exclude evidence of an alleged oral trust" in which appellees sought to preclude appellants from arguing or eliciting testimony that Joyce created an oral trust in 2013. The trial court denied appellants' motion to preclude testimony from attorney Stephen Gariepy regarding Joyce's intent and knowledge.

{¶ 24} Appellants filed a motion for reconsideration on the trial court's rulings on the motions in limine. The trial court heard oral arguments from the parties on appellants' motion for reconsideration on January 28, 2019.

{¶ 25} Regarding appellees' motion in limine to exclude evidence after February 1, 2011, the trial court opined that the evidence appellants sought to introduce merely suggested that Joyce had a different state of mind in 2013 than she did when she executed her 2010 estate plan. The trial court determined that it was not going to open the door and permit appellants to introduce evidence from 2013 without limit. The trial court explained that the relevant time period was 2010, and Joyce's intent when she executed the 2010 estate plan on December 10, 2010, and that references to 2013 could confuse the jury.

{¶ 26} The trial court denied appellants' motion for reconsideration as it pertained to all of the evidentiary rulings, with the exception of the testimony of appellants' expert witness. The trial court determined that if appellants could

demonstrate that the witness was an expert in the area of probate practice, the expert would be permitted to testify regarding whether a breach of duty occurred and whether the breach resulted in the exercise of undue influence on Joyce.

{¶ 27} On January 28, 2019, trial commenced on the will contest claim. At the beginning of trial, the trial court indicated that it was willing to reconsider the rulings on the motions in limine. (Tr. 20.) Appellants called nine witnesses at trial, including Jim, Doug, and Josh.

{¶ 28} Jim testified at trial that Josh "was a challenge our whole lives." He explained that Josh got kicked out of one or two schools and got in trouble with the police. Jim asserted that Joyce never discussed her estate planning with him. Jim had one conversation with his parents about estate planning that he initiated, to get guidance when his three children were born.

{¶ 29} Doug testified at trial about Joyce's relationship with Josh:

[I]t was always a very troubling relationship.

With Josh it was — Josh was always doing something wrong. I don't have a relationship with Josh, and I haven't had a relationship with Josh in a very long time.

My mom — Josh was my mom's errand boy for a very long time. Josh did a lot of things that were very dishonest in the business, in his personal life, and it was obviously very troubling to my mom, as it would be in any family, as it would be to me or anybody else who is a parent.

(Tr. 325.)

{¶ 30} Joyce voiced these concerns about Josh to Doug on a regular basis. Doug explained, "my mom knew that [Josh] couldn't solve things." (Tr. 325.) Doug

testified that Joyce never relied on Josh for important tasks, such as estate planning. Doug asserted that he did not discuss Joyce's estate planning with her in 2009.

{¶ 31} The testimony of appellants' witnesses demonstrated that (1) Joyce did not have trust or confidence in Josh, and she would not have relied on Josh to handle important matters. The evidence demonstrated that Joyce only trusted Josh to handle routine tasks such as running errands. Appellants' evidence established that Joyce was not susceptible to undue influence and Josh did not exercise undue influence over Joyce. Finally, the evidence showed that Joyce communicated with business advisors, accountants, and attorneys throughout the estate planning process, and Joyce's communications about her intent to these third party advisors were consistent with the 2010 estate plan.

{¶ 32} At the end of appellants' case-in-chief, appellants' trial counsel attempted to proffer evidence regarding facts and circumstances after February 1, 2011, that had previously been excluded by the trial court. Appellants' counsel sought to proffer the following evidence: (1) David Stith's opinion testimony about whether Joyce would have signed the 2010 estate plan;[4] (2) Kim's testimony regarding Joyce's statements about wanting to find Lori a house in Florida and how the house would be funded; (3) Doug's testimony about Joyce's statements during the family meeting in July 2013; (4) Lori's testimony regarding Joyce's statements in May or June 2013 about the vacation home in Florida and Joyce's statements

---

[4] Stith, Joyce's business advisor, met with Joyce in January 2009 to discuss Joyce's objectives for her new estate plan. *See Young v. Kaufman I* at ¶ 10.

during the family meeting in July 2013; (5) Jim's testimony about Joyce's statements during the family meeting; (6) Larry Oscar's testimony about a 2013 email in which Josh purportedly admitted that all five of Joyce's children were supposed to inherit equally;[5] and (7) Gariepy's testimony about Josh's purported admission that all five children were supposed to inherit equally. Appellants' trial counsel asserted that Doug, Lori, and Jim would have testified to facts and circumstances after February 1, 2011, pertaining to the July 2013 family meeting where Joyce purportedly said she wanted her children to share everything equally.

{¶ 33} Appellees' counsel objected to the evidence that appellants' counsel sought to present. The trial court excluded the evidence pertaining to Joyce's 2013 statements. Thereafter, appellees moved for a directed verdict on the will contest claim.

{¶ 34} The trial court granted appellees' motion for a directed verdict on the will contest claim. The trial court explained that the fact that Joyce may have had a change of heart, or the fact that Josh may have admitted, after Joyce became sick in 2013, that she actually wanted the five children to share everything equally, "has absolutely nothing to do with what went on in 2009 and 2010." (Tr. 16, directed verdict hearing.)

{¶ 35} The trial court's February 1, 2019 judgment entry granting appellees' motion for a directed verdict on the will contest claim provides, in relevant part,

---

[5] Oscar is an attorney that attended the January 2009 meeting where Joyce discussed her objectives for hew new estate plan. *See Young v. Kaufman I* at ¶ 10.

The Court finds that even if reasonable minds could differ as to whether [appellants' evidence was] sufficient to establish a "confidential relationship" and even if this Court assumes that the relationship is established thereby raising a presumption of undue influence, the Plaintiffs set forth no evidence by which the jury could find that undue influence actually occurred. * * *

The Court finds that Plaintiffs offered no evidence indicating that Joyce Kaufman was susceptible to undue influence and finds that the evidence presented by Plaintiffs showed that in fact she was not susceptible.

The Court further finds that Plaintiffs offered no evidence that improper influence was exerted or attempted. The testimony and exhibits presented by the Plaintiffs made clear that Joyce was meeting with, and communicating with, her business advisor, her accountant and her attorneys throughout her estate planning process. None of these people testified that Josh was in any way influencing Joyce in her estate planning.

Finally, Plaintiffs offered no evidence that there was a result showing the effect of undue influence. The evidence presented by Plaintiffs shows that in 2009, with no involvement by Josh, Joyce instructed her estate planning attorney to draft a plan that excluded Plaintiffs from her Will and Trust. The evidence showed that Joyce's plan was consistent with her prior estate planning done in 2000 with regard to the exclusion of Plaintiff Jim Kaufman as beneficiary. The evidence showed that the 2010 estate plan was consistent with her stated intentions in 2009.

Even assuming that there was a presumption of undue influence for Defendants to rebut, there was no evidence of undue influence for Defendants to rebut. Plaintiffs' own case made clear that Joyce was capable of making her intentions known, that she did so consistently and with the guidance and advice of her long trusted business advisor, her accountant, and her attorneys.

The Court finds that after construing the evidence most strongly in favor of Plaintiffs there is no evidence upon which reasonable minds could find that the essential elements of undue influence were met.

{¶ 36} On February 4, 2019, appellants filed a motion in this court to show cause as to why the trial judge should not be held in contempt for failing to comply

with this court's judgment in *Young v. Kaufman I*. This court denied appellants' motion to show cause on February 6, 2019, for lack of jurisdiction.

{¶ 37} Appellants filed a motion for a new trial on February 26, 2019. Therein, appellants argued that by precluding appellants from presenting evidence of Joyce's statements in 2013, the trial court "prohibited [appellants] from offering evidence that was considered by [this court in Y*oung v. Kaufman I*]." Furthermore, appellants argued that the trial court's evidentiary rulings were "hardly consistent with [*Young v. Kaufman I*'s] mandate." Appellants did not argue that the trial court erred in limiting or excluding Doug's testimony in their new trial motion. The trial court denied appellants' motion for a new trial.

{¶ 38} On June 20, 2019, the trial court entered judgment in favor of appellees on appellants' removal claim. The trial court's June 20, 2019 judgment entry provides, in relevant part, "the Court again finds that Plaintiffs lack standing to pursue the removal claims because they failed to prove their claims that the 2010 estate plan was invalid. Defendants are entitled to judgment on the removal claims."

{¶ 39} Appellants filed the instant appeal on June 25, 2019, challenging the trial court's June 20, 2019 judgment. Appellants assign one error for review:

> I. Whether the trial court erred on remand by excluding evidence that this Court of Appeals previously held created a genuine issue of material fact as to whether the decedent's estate plan was the result of undue influence, and then entering a directed verdict based on the absence of that evidence.

## II. Law and Analysis

## A. Scope of Appeal

{¶ 40} In their sole assignment of error, appellants argue that the trial court erred by "excluding evidence that [this court] previously held created a genuine issue of material fact as to whether [Joyce's] estate plan was the result of undue influence, and then entering a directed verdict based on the absence of that evidence." Appellants' brief at 1. Although appellants reference the trial court's judgment granting a directed verdict in favor of appellees, it is evident that appellants are primarily challenging the trial court's evidentiary rulings — particularly the trial court's decision to exclude the statements Joyce purportedly made in 2013.

{¶ 41} Accordingly, the scope of this appeal will focus on the trial court's evidentiary rulings, rather than the trial court's judgment granting a directed verdict in favor of appellees on the will contest claim and subsequent dismissal of the removal claim for lack of standing.

## B. Evidentiary Rulings

## 1. Evidence at Issue

{¶ 42} In this appeal, appellants argue that the trial court erred by prohibiting Jim's testimony about the following statements that Joyce purportedly made to him in May 2013: (1) that the 2010 estate plan was a "sin," (2) that "everything was supposed to be equal," and (3) that Joyce had been under "intense" pressure from Josh when she executed the 2010 estate plan.

{¶ 43} Appellants further argue that the trial court erred by limiting Doug's testimony. Specifically, appellants contend that the trial court erred by prohibiting Doug from testifying about (1) events that occurred after December 2010, (2) statements Joyce made to him about her 2010 estate plan, (3) whether Joyce's 2010 estate plan was consistent with what Joyce told Doug about her intentions, and (4) whether Doug believed Josh had unduly influenced Joyce with respect to the 2010 estate plan. In their reply brief, appellants acknowledged that Doug testified for the first time at trial. Appellants did not present Doug's testimony at the summary judgment stage of the proceedings.

{¶ 44} Finally, the trial court prohibited appellants from introducing Joyce's alleged statements, made during the July 2013 family meeting, that she wanted them to get along, she wanted her estate to be divided equally among the five children, and she wanted the proceeds of her life insurance policy to pay estate taxes.

### 2. Standard of Review

{¶ 45} "Whether specific evidence will be admitted is a matter left to the considerable, but not unlimited, discretion of the trial court." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 19. This court will not reverse a trial court's decision to admit or exclude evidence absent an abuse of that discretion.

{¶ 46} A trial court's determination regarding the relevance of any evidence is also reviewed for an abuse of discretion. *State v. Allen*, 73 Ohio St.3d 626, 633, 653 N.E.2d 675 (1995). Absent an abuse of discretion that affects the substantial

rights of the adverse party or is inconsistent with substantial justice, this court will uphold a trial court's evidentiary decision. *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 20.

### 3. *Young v. Kaufman*

{¶ 47} As an initial matter, we address appellants' argument that the trial court was required to admit the 2013 evidence based on this court's holding in *Young v. Kaufman I*, 2017-Ohio-9015, 101 N.E.3d 655. As noted above, this court held that genuine issues of material fact existed regarding (1) whether Josh had a confidential relationship with Joyce that would give rise to a presumption of undue influence by Josh, and (2) whether Josh's relationship with Joyce was free of undue influence. *Id.* at ¶ 64.

{¶ 48} In this appeal, appellants appear to argue that because this court concluded that genuine issues of material fact existed on the issue of undue influence that precluded the grant of summary judgment, the trial court was required to admit all of the evidence on remand in adjudicating the will contest and removal claims. Appellants' argument is misplaced.

{¶ 49} Regarding the "full evidentiary record" upon which appellants relied in opposing appellees' motion for summary judgment on the will contest claim, and the record that was before this court in *Young v. Kaufman I*, appellees did not challenge the admissibility of any of the evidence appellants submitted in opposing appellees' summary judgment motion. As a result, the trial court did not consider the admissibility of this evidence in ruling on the summary judgment motions.

Because the issue was not raised below or on appeal from the trial court's summary judgment rulings, this court also did not consider the admissibility of any evidence in reversing the trial court's summary judgment rulings — much less order the trial court on remand to admit "the full evidentiary record" into evidence at trial.

{¶ 50} Contrary to appellants' assertions, this court made no determination regarding the admissibility of any evidence, nor did this court order the trial court to admit any evidence on remand. This court's decision was issued in a summary judgment context under Civ.R. 56, and applying a de novo standard of review. In the 2017 appeal, the sole issue before this court was whether appellants had presented enough evidence *at that time* to raise a genuine issue of material fact on the will contest or removal claims. This court held that based on the evidence that had been presented at the summary judgment stage, the matter should be remanded to litigate the undue influence issue as it pertained to appellants' will contest claim.

{¶ 51} The rules governing the admissibility of evidence are entirely different from the summary judgment standard under Civ.R. 56. Unlike summary judgment rulings that we review de novo, this court reviews evidentiary rulings for an abuse of discretion.

{¶ 52} For all of these reasons, we overrule appellants' assignment of error to the extent that appellants contend that the trial court was required to admit all of the evidence that had been submitted by the parties with respect to the summary judgment motions based on this court's holding in *Young v. Kaufman I.*

**4. Hearsay**

{¶ 53} Appellants argue that the aforementioned evidence — Jim's testimony about Joyce's statements in 2013 and Doug's testimony — is admissible under the hearsay exception set forth in Evid.R. 803(3) for "[t]hen existing, mental, emotional, or physical condition."

{¶ 54} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence." *State v. Wright*, 8th Dist. Cuyahoga No. 100803, 2014-Ohio-5424, ¶ 32.

{¶ 55} Evid.R. 803(3) provides an exception to the hearsay rule for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition." Evid.R. 803(3) provides that the following is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

{¶ 56} "The state of mind exception under Evid.R. 803(3) 'does not include statements of belief of past events by declarant. To include statements of belief about a past event would negate the entire proscription against hearsay evidence.'"

*State v. Thomas*, 8th Dist. Cuyahoga No. 106194, 2018-Ohio-2841, ¶ 30, quoting 1980 Staff Notes, Evid.R. 803(3).

{¶ 57} The testimony sought to be introduced under Evid.R. 803(3) "must point towards the future rather than the past. When the state of mind is relevant it may be proved by contemporaneous declarations of feeling or intent." *State v. Apanovitch*, 33 Ohio St.3d 19, 21-22, 514 N.E.2d 394 (1987), citing *Shepard v. United States*, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933).

> These precepts of caution are a guide to judgment here. There are times when a state of mind, if relevant, may be proved by contemporaneous declarations of feeling or intent. *Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 295[, 12 S.Ct. 909, 36 L.Ed. 706 (1892)]; *Shailer v. Bumstead*, 99 Mass. 112 [(1868)]; Wigmore, §§ 1725, 1726, 1730. Thus, in proceedings for the probate of a will, where the issue is undue influence, the declarations of a testator are competent to prove his feelings for his relatives, but are incompetent as evidence of his conduct or of theirs. *Throckmorton v. Holt*, 180 U.S. 552, 571[-573, 21 S.Ct. 474, 45 L.Ed. 663 (1901)]; *Waterman v. Whitney*, 11 N.Y. 157 [(1854)]; *Matter of Kennedy*, 167 N.Y. 163, 172[,] 60 N.E. 442 [(1901)].

*Shepard* at 104-105.

{¶ 58} In support of their argument that the trial court erred by excluding the aforementioned evidence, appellants direct this court to the 2006 Staff Notes to Evid.R. 803(3), which provide, in relevant part,

> the [then existing mental, emotional, or physical condition] exception does not include statements of belief of past events by declarant. To include statements of belief about a past event would negate the entire proscription against hearsay evidence.
>
> In one instance, statements of belief by declarant are rendered admissible under this exception. Where the statement is by a testator concerning the execution, revocation, identification or terms of a will, such statement though constituting a belief about a past event is admissible. The declaration in this specific instance is highly

trustworthy since it relates so closely to the testator-declarant's affairs, and the general prohibition against statements of belief about past events is unnecessary.

{¶ 59} Appellants further direct this court to *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246 (8th Dist.), for the proposition that Joyce's statements are admissible to determine whether the 2010 estate plan reflects Joyce's wishes or was the result of undue influence.

{¶ 60} In *Ament*, the plaintiff-appellant, as trustee of a trust agreement between him and his deceased wife, sued his wife's younger sister, Young Hee Shin Kim ("Young Hee"). *Id.* at ¶ 1. Appellant alleged that Young Hee and his cousin had caused the decedent, through undue influence, fraudulent concealment, and fraudulent inducement, to change the beneficiary designation on a $500,000 life insurance policy from appellant, as trustee, to Young Hee.

{¶ 61} Appellant filed a pretrial motion in limine to exclude hearsay statements decedent made to any witnesses who would testify at trial. The trial court denied the motion.

{¶ 62} On appeal, appellant argued that the trial court erred in denying his motion in limine and permitting decedent's insurance agent and appellant's cousin to testify regarding what decedent told them. First, appellant objected to appellant's cousin's testimony that decedent told her in or around August 2004, following a meeting with an estate attorney, during which the structure of decedent's estate plan was discussed, that decedent intended to grant the proceeds of one insurance policy to her sister, and the other policies, plus the balance of her estate, to her appellant-

husband. This court found that the cousin's testimony was admissible under Evid.R. 803(3) as a statement of decedent's intent in granting the proceeds of one insurance policy to her sister. *Ament*, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246, at ¶ 27.

{¶ 63} Second, appellant objected to the admission of decedent's statement in or around July 2005 to her insurance agent explaining why she designated Young Hee, and not her other sister, as beneficiary of one of the insurance policies. The insurance agent testified that in June 2005, decedent called her and told her that she wanted to change the beneficiary on her life insurance policy. The agency sent the form to decedent on July 1, 2005; decedent completed and returned the form on July 4, 2005. Shortly after decedent completed and returned the form, decedent told the agent that the new beneficiary on the policy was her sister, Young Hee. Decedent told her that Young Hee did not have a husband, house, or money like the other sister. In September 2005, decedent gave Young Hee an envelope that contained the change of beneficiary form. On appeal, this court held that the trial court did not err in admitting this statement because it was admissible under Evid.R. 803(3) to explain decedent's motive in designating Young Hee, and not her other sister, as beneficiary, as it constitutes an exception under Evid.R. 803 to the hearsay rule. *Id.* at ¶ 29. Decedent's statement was made shortly after decedent completed the change of beneficiary form.

{¶ 64} After reviewing the record, we find this case to be distinguishable from *Ament*. In *Ament*, the decedent's statements that appellant challenged on appeal

constituted decedent's then existing state of mind: her intent in granting the proceeds of a life insurance policy to her sister, and her motive in designating her younger sister as beneficiary. These statements were made at the time decedent granted the life insurance proceeds to her sister in August 2004, and at the time decedent changed the beneficiary of her life insurance policy in July 2005.

{¶ 65} In this case, Joyce's statements in 2013 were not made at or around the time Joyce executed her estate plan in December 2010. Nor did appellants attempt to introduce Joyce's 2013 statements to demonstrate Joyce's then existing (i.e., at the time she executed the 2010 estate plan) state of mind — her intent or motive — in excluding appellants as beneficiaries.

> In order to use Evid.R. 803(3) to admit hearsay testimony, the statement *must refer to a present condition, not a past condition*, i.e. "I am afraid of X." *McGrew v. Popham*, 5th Dist. [Licking] No. 05 CA 129, 2007-Ohio-428, ¶ 28, citing *Apanovitch*, 33 Ohio St.3d 19, 514 N.E.2d 394. Additionally, Evid.R. 803(3) does not permit testimony regarding the declarant's statements as to *why* he or she held a particular state of mind. *State v. Stewart*, 75 Ohio App.3d 141, 152, 598 N.E.2d 1275 (11th Dist.1991), citing *Apanovitch*[at 21].

(Emphasis added.) *Brown v. Ralston*, 2016-Ohio-4916, 67 N.E.3d 15, ¶ 42 (7th Dist.).

{¶ 66} Here, to the extent that appellants sought to present Joyce's 2013 statement as evidence that the 2010 estate plan was the result of undue influence, the 2013 statement is not "I am under intense pressure from Josh." Rather, the 2013 statement is Joyce *was* under intense pressure from Josh when she executed her

estate plan in 2010.  Therefore, the hearsay testimony refers to a past condition, not a present condition.

{¶ 67} Furthermore, Jim's testimony about his May 2013 conversation with Joyce and Joyce's statement that she needed to meet with Steve Gariepy,[6] and Joyce's statement to Gariepy in April 2013 that she wanted to revise her estate plan so that all five children would share equally in her estate is inadmissible because it constitutes a statement as to *why* Joyce held a particular state of mind (purportedly wanting to revise her estate plan).

> Several courts have found a decedent's statements regarding a party's *future* inheritance to be admissible under Evid.R. 803(3) as reflecting the decedent's then-existing state of mind and intent for the future. *See, e.g.*, [*Knowlton v. Schultz*, 179 Ohio App.3d 497, 2008-Ohio-5984, 902 N.E.2d 548, ¶ 39 (1st Dist.)] (involving a decedent's statement to his daughter that she would receive income from a trust after his death); *McGrew* [at] ¶ 30 (involving a decedent's statement regarding her intent that property be transferred to certain individuals upon her death); *Brown* [at ¶ 48] (involving a decedent's statements regarding his intent to transfer property to his granddaughter upon his death); *Ament*[, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246,] at ¶ 29 (involving a decedent's statements of intent to grant proceeds of insurance policies to certain family members).

(Emphasis added.)  *Pirock v. Cain*, 11th Dist. Trumbull No. 2019-T-0027, 2020-Ohio-869, ¶ 86.  Here, Joyce's 2013 statements are not relevant to the validity of the 2010 estate plan, nor do Joyce's 2013 statements pertain to her then-existing state of mind and intent for future inheritance.  Joyce's 2013 statements do not relate to the future, they relate to the past.

---

[6] Gariepy is the attorney Joyce began working with in the summer of 2010 on her new estate plan.  *See Young v. Kaufman I* at ¶ 13.

{¶ 68} For all of these reasons, Joyce's 2013 statements do not fall within the exception to the hearsay rule under Evid.R. 803(3). In challenging Joyce's 2010 estate plan, appellants attempted to present Joyce's 2013 statements regarding her intent to divide her assets equally among the five children and Joyce's feeling that she was under intense pressure from Josh. Appellants sought to introduce these statements as evidence of Joyce's intent, motive, or feeling in the past, at the time she executed the 2010 estate plan. The 2013 statements refer to a past condition, state of mind, or mental feeling and do not reflect Joyce's then existing state of mind in 2010. *See McGrew*, 5th Dist. Licking No. 05 CA 129, 2007-Ohio-428, at ¶ 30. Accordingly, Joyce's 2013 statements were not admissible under Evid.R. 803(3).

{¶ 69} Finally, regarding appellants' argument that the trial court erred in limiting Doug's testimony at trial, Doug testified that he and Joyce talked "all the time" about Joyce's *stock* in the family business. However, Doug testified that he did not discuss Joyce's *estate planning* with her prior to her execution of the 2010 estate plan. As noted above, Doug asserted that Josh was Joyce's errand boy, he was dishonest personally and professionally, and Josh's dishonesty was very troubling to Joyce. Doug explained that Joyce "knew that [Josh] couldn't solve things," and Doug unequivocally testified that Joyce did not rely on Josh for important tasks like estate planning.

{¶ 70} The trial court permitted Doug to testify about Joyce's intentions regarding her stock in the family company. Doug was confident that he and Joyce

would get to a point where he was controlling the business, and he testified that it was not Joyce's intention for her stock in the business to get tied up in her estate.

{¶ 71} When appellants' counsel attempted to elicit testimony from Doug regarding what Joyce told him about her estate plan, defense counsel objected on the basis that the testimony was inadmissible hearsay. The trial court called the parties to sidebar. Appellants' counsel argued that Joyce's statements to Doug about her estate plan were relevant and admissible under the "present intent" exception to the hearsay rule. The trial court prohibited Doug from testifying about what Joyce told him about her estate plan, concluding that Doug testified that Joyce did not discuss her estate with him, the present intent hearsay exception was inapplicable, and appellants' counsel could not elicit testimony speculating about Joyce's intent regarding the 2010 estate plan.

{¶ 72} The trial court did not permit Doug to testify about (1) what Joyce told him regarding her intentions with respect to the 2010 estate plan, (2) whether he believed the 2010 estate plan expressed Joyce's intentions, (3) whether he was convinced that Josh exercised undue influence against Joyce, or (4) whether Josh or Kim threatened him not to testify against them at trial.

{¶ 73} After review, we find that the trial court did not err or abuse its discretion in limiting the scope of Doug's testimony. Just as Jim's testimony about Joyce's statements in 2013 was not admissible under Evid.R. 803(3), Doug's testimony about the same — events that occurred *after* Joyce executed the 2010 estate plan, and the statements Joyce purportedly made to Doug about her 2010

estate plan (i.e., whether Joyce's 2010 estate plan was consistent with what Joyce told Doug about her intentions) — was not admissible under the Evid.R. 803(3) exception to the hearsay rule. The testimony that appellants' counsel attempted to elicit from Doug was overly speculative in regard to the timeframe that Joyce purportedly made the statements, and the context in which the statements were purportedly made (i.e., in the context of her stock in the family company, her 2010 estate plan, or both).

{¶ 74} Based on the record before this court, we are unable to conclude that the trial court's decision to exclude Joyce's 2013 statements — which appellants attempted to introduce at trial through the testimony of Jim and Doug — was unreasonable, arbitrary, or unconscionable. Therefore, appellant's sole assignment of error is overruled.

### III. Conclusion

{¶ 75} After thoroughly reviewing the record, we affirm the trial court's judgment. We find no basis upon which to conclude that the trial court's decision to exclude the statements purportedly made by Joyce in 2013 was unreasonable, arbitrary, or unconscionable, and we cannot find that the trial court's evidentiary ruling affected appellants' substantial rights.

{¶ 76} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR